**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant,**

Anselmo Cardillo, Frank Basile, Anthony Casbarro, Frank Cassaro, [sic] James Cassidy, Ernie Forde, Ralph Fouse, Hamilton Kane, Joseph Kennan, Vincent Macioci, Thomas McNamara, Charles Mondello, Jack Monteserrato, Anna Pasqua, Thomas Quinn, Arthur Schiliro, Phil Spinelli, Peter Devito, Joseph Elliot and Joseph Luckett, Individually and on behalf of all others similarly situated, Movants.

**Anselmo CARDILLO, et al., Plaintiffs,**

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.**

Nos. 80 CIV 1292 (LBS), 80 CIV 8400 (LBS).

United States District Court, S.D. New York.

Feb. 22, 1983.

E.E.O.C., New York Dist. Office, Jean L. Schmidt, Senior Trial Attorney, Susan Anspach, Senior Trial Attorney, New York City, for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for Consolidated Edison Co. of New York, Inc.; Howard L. Ganz, New York City, of counsel.

Shneyer & Shen, Hall, Clifton & Schwartz, New York City, for movants; Paul A. Shneyer, Karen S. Schwartz, New York City, of counsel.

## OPINION

SAND, District Judge.

On March 4, 1980, three days prior to the date upon which the statute of limitations would have barred any claims against Consolidated Edison for the terminations at issue herein, the United States Equal Employment Opportunity Commission (the "EEOC") commenced the proceeding *EEOC v. Consolidated Edison,* 80 CIV 1292 (LBS) (the *"EEOC* action") pursuant to section 7(b) of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 626(b), and sections 16(c) and 17 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(c), 217. The complaint alleged, *inter alia,* that defendant Consolidated Edison ("Con Edison") had, since March 3, 1977, willfully violated the ADEA by:

"discriminating on or about March 7, 1977, against certain non-union employees, including but not limited to the employees listed on Exhibit A annexed hereto and incorporated herein who were employed by defendant and who were then between the ages of 40 and 65, with respect to their compensation, terms, conditions or privileges of employment by discharging them, and/or involuntarily retiring them because of their age; and by. . . .

discriminating against employees who were then between the ages of 40 and 65 with respect to their compensation, terms, conditions or privileges of employment by refusing to hire them because of their age."

Complaint ¶¶ 7, 8. The relief sought included a judgment enjoining Con Edison from violating the ADEA; an order requiring Con Edison to institute policies, practices and affirmative action programs that provide equal employment opportunities for individuals protected by the ADEA; and re-instatement and backpay, as well as liquidated damages, for those former Con Edison employees on whose behalf the EEOC brought suit (the "claimants"). No judicial action against Con Edison had been commenced by any claimant prior to the filing of the EEOC suit.

More than two years of extensive discovery and pretrial preparation followed, during which over 200 depositions were conducted, more than 100,000 pages of documents were reviewed (Affidavit of Howard L. Ganz, dated Jan. 17, 1983, ¶ 4), and numerous motions were vigorously argued and decided by the Court. *See, e.g.,* Opinion, dated January 21, 1981; Opinion, dated June 2, 1981; Order, dated June 23, 1981; Order, dated September 9, 1981; Opinion, dated February 24, 1982; Opinion, dated May 10, 1982; Order, dated July 6, 1982; Memorandum Endorsement, dated October 1, 1982; Order, dated October 14, 1982.

Upon the eve of trial and upon the suggestion of the Court, the EEOC and Con Edison engaged in settlement discussions, the result of which was a proposed settlement. All of the claimants but three—for whom the EEOC lacked correct addresses—were then notified by mail. Partly in response to the vociferous opposition that these notices evoked from some of the claimants—as expressed in written communications addressed to the Court and forwarded to the EEOC—the EEOC invited all claimants to a meeting held on December 4, 1982, to explain further the proposed settlement and to answer any remaining questions. Once again, some claimants expressed their strong dissatisfaction.

On December 13, 1982, the EEOC and Con Edison entered into a Settlement of Agreement (the "settlement") which to some unspecified extent had been modified

to reflect expressions of dissatisfaction. Briefly stated, the settlement provides for the payment of benefits worth approximately $3.5 million dollars to the claimants. Each of the terminated Con Edison employees who has remained alive and has not "withdrawn" as a claimant[1] will recover money under the settlement. The sums ultimately paid to each claimant do not take into account the merits of the particular case but rather are based on the claimant's age: upon attaining the age of 65, each claimant will receive for the duration of his life a monthly payment of at least $100.00, pursuant to an annuity contract purchased in his behalf by Con Edison. Each claimant will also receive a presently indeterminable lump-sum payment inversely related to the claimant's age as of March 7, 1977. Further, the settlement provides that it is the "explicit and essential agreement" between the parties that all claims asserted by the EEOC be "resolved and settled in full" and "dismissed with prejudice". Agreement of Settlement ¶ 7, annexed as Exhibit C to the Affidavit of Howard Ganz, Esq., dated January 17, 1983.

On December 13, 1982, the parties also entered into on December 13th, a Stipulation of Dismissal with Prejudice, which the Court "So Ordered" on the following day. In so doing, the Court noted:

"A number of former employees of the defendant have written to the Court expressing views with respect to the appropriateness of the within settlement. Some of these communications reflect a misunderstanding of the Court's role in approving this settlement.

This suit is not a class action nor does it fall within any other of the limited categories of cases in which a Court is called upon to determine the fairness or desirability of a proposed settlement. In approving this settlement, this Court merely acknowledges that the parties have exercised the right, which they have, to discontinue this litigation."

On December 16, 1982, twenty claimants, dissatisfied with the terms of the settlement, commenced the action captioned *Cardillo, et al. v. Consolidated Edison,* 82 CIV 8400 (LBS) (the *"Cardillo* action"). The complaint describes the plaintiffs as Con Edison employees who were discharged from employment in March, 1977, when they were between the ages of 40 and 65, and assert violations of ADEA identical to those alleged by the EEOC in the *EEOC* action. It is not disputed that each plaintiff in the *Cardillo* action is a claimant in the EEOC action and that both seek to redress the same alleged ADEA violations by Con Edison.[2]

## THE MOTIONS

In the *EEOC* proceeding, the group of claimants appearing as plaintiffs in the *Cardillo* case (hereafter "movants") have moved this Court for an order pursuant to Fed.R.Civ.Proc. 60(b)(6) dismissing the action without prejudice to the employees who refuse to accept the terms of the settlement entered into by the parties and to allow them to litigate their claims in the *Cardillo* proceeding or an order allowing the movants to "opt-out" of the settlement and directing the EEOC to prosecute their claims; or, in the alternative, an order pur-

1. Several individuals named in Exhibit A to the complaint as claimants chose to withdraw from the lawsuit rather than be subjected to depositions and other discovery demands. The EEOC and Con Edison entered into stipulations of dismissal with prejudice with regard to these individuals.

2. All but one of the movants are listed on Exhibit A to the complaint in the *EEOC* action, and even he clearly comes within the class of "affected employees" whose rights EEOC sought to vindicate in the *EEOC* proceeding. Paragraph 7 of the complaint alleges discrimi-

nation "against certain non-union employees, *including but not limited to* the employees listed on Exhibit A ... by *discharging them* and/or involuntarily retiring them because of their age." Moreover, this individual was explicitly identified as one of the claimants in the *EEOC* action, when his name was submitted by the EEOC in response to an interrogatory requesting the names of all persons adversely affected by the unlawful employment practices alleged in the complaint. *See* Exhibit E to Ganz Affidavit, dated January 17, 1983.

suant to Fed.R.Civ.Proc. 24(a)(2) allowing movants to intervene, "opt-out" of the settlement and pursue their claims in this Court; or, in the alternative, an order to hold a hearing on the fairness of the settlement.

In the *Cardillo* proceeding, Con Edison has moved to dismiss the complaint or, in the alternative, for summary judgment on the ground that this proceeding has been precluded by the earlier-filed and now-dismissed EEOC action.

The parties have submitted briefs and affidavits in support of their positions and have appeared before the Court for oral argument. They have concurred in the Court's view, as stated during oral argument, that the motions in both proceedings be disposed of jointly.

### ISSUE

Section 7(c)(1) of the ADEA states:

"any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* That the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter."

29 U.S.C. § 626(c)(1).[3]

The primary issue raised by the motion is as follows: Where the proviso of ADEA § 7(c)(1) is applicable, *i.e.,* where the aggrieved person's unexercised right of action has been "terminated" by the EEOC's commencement of an enforcement action, does such person nevertheless retain a revivable and thus judicially protectible private right of action for his ADEA-based claim?

Movants contend that this issue is correctly resolved in the affirmative and that they are therefore entitled to some form of judicial review of the EEOC's decision to enter into a stipulation of dismissal with

prejudice as to their claims in the *EEOC* proceeding. Movants further contend that such judicial review should take the form of an inquiry into the "fairness" of the settlement and suggest that the Court conduct a hearing to that end.

█ Our reading of the statute and the relevant legislative history, however, convinces us that the above-stated issue must be answered in the negative. The proviso of ADEA § 7(c)(1) manifests a congressional intent to place the EEOC's conduct of ADEA enforcement proceedings beyond the interference of private non-party individuals, at least where such persons fail to file suit prior to the EEOC's commencement of a suit on their behalf. *Compare Burns v. Equitable Life Assurance Co.,* 696 F.2d 21 (2d Cir.1982). Accordingly, movants' motion must be denied in its entirety and that of Con Edison granted.

### DISCUSSION

Section 7(c)(1) of the ADEA, quoted above, allows a person who believes himself to be the victim of discrimination proscribed by the ADEA to file a law suit on his own behalf, as well as on the behalf of other, similarly situated employees. ADEA § 7(c)(1), Fair Labor Standards Act ("FLSA") § 16(b), 29 U.S.C. §§ 626(c)(1), 216(b).[4] The employee's right to bring suit, however, "terminates" upon the filing of a suit by the EEOC to enforce such employee's ADEA-granted rights. ADEA § 7(c)(1), 29 U.S.C. § 626(c)(1); *see also* FLSA § 16(b), (c), 29 U.S.C. § 216(b), (c); S.Rep.No. 145, 87th Cong., 1st Sess., *reprinted in* [1961] U.S. Code Cong. & Ad.News, at 1620, 1658–59; Conf.Rep. No. 327, 87th Cong., 1st Sess., *reprinted in* [1961] U.S. Code Cong. & Ad.News, at 1706, 1713–14; H.R.Rep. No. 93–913, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Adm. News, at 2811, 2825; *see also Dunlop v. Pan American World Airways, Inc.,* 672 F.2d 1044, 1049 n. 6 (2d Cir.1982) ("mere filing of

---

**3.** The EEOC assumed the ADEA enforcement powers of the Secretary of Labor pursuant to Reorganization Plan No. 1 of 1978, 92 Stat. 3781.

**4.** FLSA §§ 16(b), 16(c), 17, 29 U.S.C. §§ 216(b), 216(c), 217, are incorporated into the ADEA under ADEA § 7(b), 29 U.S.C. § 626(b).

the Secretary's complaint necessarily extinguishes the rights of employees to bring individual litigation under the ADEA"); *Reich v. Dow Badische Co.,* 575 F.2d 363, 368 (2d Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *cf. Adams v. Proctor & Gamble Mfg. Co.,* 678 F.2d 1190, 1193-94 (4th Cir.1982) (noting EEOC's argument distinguishing between Title VII and ADEA, the latter of which explicitly states congressional intent to terminate private rights to sue), *rev'd on other grounds,* 697 F.2d 582 (4th Cir. *en banc* 1983); *Burns v. Equitable Life Assurance Co.,* 696 F.2d 21 (2d Cir.1982) (suits filed *prior* to EEOC enforcement suits are not terminated by the latter).

Moreover, once the EEOC commences an enforcement suit, an employee who has failed to file his own action and on whose behalf relief is sought is not permitted to intervene as a party pursuant to Fed.R.Civ. Proc. 24(a)(2) in the ongoing suit. *See Marshall v. United States Postal Service,* 481 F.Supp. 179, 180, 181 (D.D.C.1979) ("To allow employees to intervene in the Secretary's suit would entail the intervenors becoming parties plaintiff. That is prescribed [sic] by the Act's terms."); *EEOC v. American Tele. & Tele. Co.,* 365 F.Supp. 1105, 1121 (E.D.Pa.1973), *aff'd on other grounds,* 506 F.2d 735, 739 (3d Cir.1974); *Usery v. Board of Public Education,* 418 F.Supp. 1037 (W.D. Pa.1976). *See also Donovan v. University of Texas,* 643 F.2d 1201, 1208 (stating that both "opting-in" and intervention is impermissible in FLSA § 17 suits).[5] *Compare* ADEA § 7(c)(1), 29 U.S.C. § 626(c)(1) (unqualifiedly providing for automatic termination of private right to sue), *with* Title VII § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1) (permitting intervention by aggrieved individual subsequent to agency's filing of suit). Nor is an individual nonparty claimant permitted to "opt-out" of an EEOC-initiated suit and commence his own ADEA suit, as allowed in some instances in a Fed.R.Civ. Proc. 23(b)(3) class action. As in Title VII proceedings, *see General Telephone Co. v. EEOC,* 446 U.S. 318, 100 S.Ct. 1698, 64

L.Ed.2d 319 (1980), EEOC suits under the ADEA are not governed by Fed.R.Civ.Proc. 23, *Donovan v. University of Texas, supra.*

Finally, where the EEOC files suit prior to a filing by the aggrieved employee on whose behalf it seeks relief, the disposition with prejudice of the claims asserted by the EEOC has "preclusive effect" on the employee's ADEA claims. *See Dunlop, supra,* 672 F.2d at 1072 n. 6.

█ In sum, an employee who fails to file a law suit seeking redress of his ADEA-recognized rights prior to the EEOC's commencement of a suit on such employee's behalf lacks any power to assert such rights, regardless whether the assertion is attempted within or without the EEOC suit, or before or after judgment is entered therein.

While movants appear to acknowledge the above-articulated restraints on their power to bring their own action, they assert that FLSA § 16(c) provides the means by which a "terminated" ADEA cause of action may spring anew. The relevant portion of that provision states:

"The right provided by subsection (b) of this section to bring an action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation under sections 206 and 207 of this title or liquidated or other damages provided by this subsection owing to such employee by an employer liable under the provisions of subsection (b) of this section, *unless such action is dismissed without prejudice on motion of the Secretary.*"

29 U.S.C. § 216(c) (emphasis supplied). According to movants, the word "terminate" as employed in the statute, must be construed in the sense of "held in abeyance" or

---

**5.** *See Burns v. Equitable Life Assurance Co.,* (ADEA § 7(c)(1) intended to adopt the scheme of the FLSA in allocating enforcement authority between public and private plaintiffs).

"suspended"; if upon motion of the EEOC a FLSA § 16(c) suit is dismissed without prejudice, then the individual's right to sue is revived. *See* Memorandum in Opposition to Defendant's Motion, Pt. I. Recognizing, however, that the EEOC has moved for and obtained a dismissal of its action *with* prejudice, movants apparently argue that the possible revival of the the individual's right to sue requires that where the EEOC moves to dismiss an ADEA action brought at least in part under § 16(c), the agency must meet the standards of an adequate class representative: if an individual claimant is, as judged by the Court, inadequately represented by the EEOC, then due process requires that the dismissal of his claim with prejudice not be binding upon him. *See id.* Pt. IA, at p. 2 (citing *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *General Telephone Co. v. EEOC,* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

Movant's argument fails at several points. First, while it is correct that the ADEA incorporates by reference FLSA § 16(c), the particular provision in § 16(c) upon which movant's argument is grounded was a FLSA amendment adopted in 1974, some seven years after the ADEA's enactment in 1967. Pub.L. 93–259, 88 Stat. 73. Further, ADEA § 7(c)(1) states simply that the private right "shall terminate" and, unlike FLSA § 16(c), makes no reference to any possible revival thereof. It is significant in this regard that where Congress sought in the ADEA only to suspend an age discrimination suit, it resorted to the term "supersede". *See* ADEA § 14(a), 29 U.S.C. § 633(a) (commencement of ADEA action "supersedes" any state action) and H.R.Rep. No. 805, 90th Cong., 1st Sess., *reprinted in* [1967] United States Cong. Code & Ad. News 2213, 2219 (ADEA action to be a "stay" on state action). Where an arguable conflict exists between ADEA § 7(c)(1) and FLSA § 16(c), it appears clear, despite the incorporation provision of ADEA § 7(b), that the terms of the former provision should govern this ADEA proceeding. *Cf. Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) ("[I]n enacting the ADEA, Congress exhibited ... a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation.").

Finally, and most importantly, the analysis set forth by movants is contrary to the congressional scheme embodied in the ADEA, as articulated in the legislative history of the act and judicial constructions thereof. The grant of the right to sue to redress ADEA violations to both aggrieved persons and the EEOC necessarily created the problem of potentially duplicative litigation. *Cf.* S.Rep.No. 145, 87th Cong., 1st Sess., *reprinted in* [1961] United States Code & Ad.News 1620, 1659. Having resolved that primary ADEA enforcement responsibility should lie with the EEOC and that private lawsuits be "secondary to administrative remedies and suits brought by the [EEOC]", *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 841 (3d Cir. 1971), Congress sought to effect such resolution through the proviso of ADEA § 7(c)(1), *See* 113 Cong.Rec. 34,748 (1967) ("In order for the Secretary to achieve to the optimum the purposes of the act, section 7(c) provides that rights of individuals to bring actions shall terminate when the Secretary commences an action ...."); *id.* at 31,250.

The EEOC is thus charged with the responsibility of investigating, litigating, and, if possible, settling claims on behalf of both the general public and individual victims of discrimination. *See General Telephone Co. v. EEOC,* 446 U.S. 318, 326 n. 8, 100 S.Ct. 1698, 1704 n. 8, 64 L.Ed.2d 319 (1980). That the EEOC as a result of this dual obligation is assigned the difficult role of effecting both the public interest (*i.e.,* the achievement of equal employment opportunities by preventing future violations of the civil rights laws, *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 417, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975)) and the individual's interest (*i.e.,* being made whole for injuries suffered on account of discrimination, *id.* at 418, 95 S.Ct. at 2372) is a circumstance that may raise questions as to the wisdom of the congressional scheme. *See, generally, Rodriguez v. East Texan*

*Motor Freight,* 505 F.2d 40, 66 (5th Cir. 1974), *vacated and remanded on other grounds,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (Title VII case: "While the Government may be willing to compromise in order to gain prompt, and perhaps nationwide, relief, private plaintiffs, more concerned with full compensation for class members, may be willing to hold out for full restitution."). By commencing suit before any of the movants chose to do so, the EEOC pursuant to ADEA § 7(c)(1) became the sole cognizable plaintiff with regard to the claims it sought to vindicate. As such, the EEOC must be given the broad discretion accorded any plaintiff in the conduct and discontinuance of its suit. The EEOC has been statutorily, and thus conclusively, determined to be an adequate representative of those whose rights it seeks vindication. Because the ADEA "creates a remedy for an injury not compensable at common law", *Jaeger v. American Cyanamid Co.,* 442 F.Supp. 1270, 1272 (E.D.Wis.1978), the procedural conditions that are inextricably interwoven in, and limit the availability of, the rights granted therein are generally permissible and must be tolerated as "the bitter with the sweet", *Arnett v. Kennedy,* 416 U.S. 134, 153–54, 94 S.Ct. 1633, 1643–44, 40 L.Ed.2d 15 (1974).

While it is conceivable that there may arise instances of EEOC conduct relating to the conduct of an enforcement proceeding requiring the application of the inherent equitable powers of the Court we are confident that the proceeding before us is not such an instance. Charges that two of the 126 claimants had claims that were valued at sums significantly greater than they are to receive under the settlement and that the settlement unfairly fails to provide benefits in accordance with the merits of each claim are simply insufficient to warrant the reopening of the order of dismissal, especially in light of the diligent EEOC representation which the Court has observed and alluded to above at p. 469. We note, too, that the EEOC's pretrial claim estimations were vigorously disputed by counsel for Con Edison, as well as questioned at an early point in this litigation by an EEOC enforcement officer, and that settlement distributions premised on a basis other than the merits of individual claims are not uncommon. Apart from all other considerations noted above, the likelihood of a successful challenge on the merits to the settlement is too remote to warrant any further delay in its consummation and the distribution of proceeds now delayed not only as to movants but to all other claimants as well.

## CONCLUSION

While we recognize that Fed.R.Civ.Proc. § 60(b)(6), permitting the vacating of a judgment "for any . . . reason justifying relief", calls for liberal application, *United States v. Cirami,* 563 F.2d 26, (2d Cir.1977) (quoting approvingly *Moore's Fed. Practice* ¶ 60.72[2], at 375), and that the recent holding of this Circuit in *Dunlop v. Pan American World Airways, Inc.,* 672 F.2d 1044 (2d Cir.1982), suggests that movants are "sufficiently connected and identified with the Secretary's [EEOC's] suit to entitle them to standing to invoke Rule 60(b)(6)", *id.* at 1052,[6] we are of the opinion that movants

---

**6.** Movant's reliance on *Dunlop v. Pan American World Airways, Inc.,* 672 F.2d 1044 (2d Cir.1982), is misplaced. In *Dunlop,* an ADEA action, the Second Circuit allowed a motion pursuant to Fed.R.Civ.Proc. 60(b)(6) by nonparty claimants to modify a final settlement agreement. *Dunlop,* however, did not involve any attempt "to reopen or intervene or initiate a new federal lawsuit", *id.* at 1052 n. 8, or "to circumvent the Secretary's exclusive control of federal suits", *id.* at 1053. Indeed, the Rule 60(b)(6) motion was fully supported in an amicus brief filed by the Secretary and was explicitly construed as a "motion to amend by the Secretary". *Id.* at 1052. The sole limited purpose of the motion and the reopening granted was to clarify an ambiguous provision of the settlement so that the state claims of some of the federal claimants would not be inadvertently extinguished.

The Second Circuit in *Dunlop* cited with apparent approval the district court's denial of that portion of the motion requesting the exclusion of movants from the preclusive effect of the settlement on their individual ADEA claims:

"[A]s the district court pointed out, it appears that the mere filing of the Secretary's

fail to present a meritorious reason to reopen and modify this Court's endorsement of the Stipulation of Dismissal with Prejudice. The Court is further of the view that this is not a context in which movants can be afforded intervention pursuant to Fed.R. Civ.Proc. 24(a)(2), regardless of whether such intervention is sought prior or subsequent to judgment. Finally, because the fairness of the settlement agreement is a factual issue that we need not further address herein, the request for a hearing is denied. For the same reasons, Con Edison's motion for summary judgment in the *Cardillo* proceeding is granted.

SO ORDERED.

complaint necessarily extinguishes the rights of employees to bring individual litigation under the ADEA, 29 U.S.C. § 216(b). The district court therefore lacked the power to revive previously extinguished *federal* claims."

672 F.2d at 1049 n. 6 (emphasis added).

*Dunlop* is clearly inapposite to the instant proceeding. Here, movants are seeking solely to assert anew their federal claims; they desire to litigate whether a fair federal settlement was reached with Con Edison, and the EEOC is opposed to their motion. We note, too, that paragraph 14 of the settlement in this proceeding explicitly provides that the proceedings on two state claims, stayed during this litigation pursuant to 29 U.S.C. § 633(a), shall not be affected by either the settlement or the order of dismissal. In sum, it would be contrary to both the letter and spirit of the *Dunlop* decision, as well as the ADEA, to find that *Dunlop* supports plaintiff-movants' position.