**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., Plaintiffs,**

v.

**COMMONWEALTH OF PENNSYLVANIA, Pennsylvania State Police, and The Commissioner of the Pennsylvania State Police, Defendants.**

Civ. A. No. 83–0321.

United States District Court, M.D. Pennsylvania.

Aug. 13, 1991.

Brenda B. Collins, Reginald L. Sydnor and Deborah McIver Floyd, Regional Atty., E.E.O.C., Philadelphia, Pa., and Louis Rodriguez, E.E.O.C., Newark, N.J., for E.E.O.C.

Victor P. Stabile, Dilworth, Paxson, Kalish & Kauffman, Harrisburg, Pa., for Otto J. Binker, Roy L. Titler and Major George Evan.

Joseph S. Rengert, Pennsylvania State Police, Harrisburg, Pa., for defendants.

Joseph J. Dean, pro se.

Thomas W. Scott, Killian & Gephart, Harrisburg, Pa., Ronda K. Kiser, Harrisburg, Pa., Philip B. Friedman, Erie, Pa., for George K. McCloskey.

George K. McCloskey, pro se.

William Molczan, pro se.

Richard F. Skillman, pro se.

## MEMORANDUM

CALDWELL, District Judge.

Pending is a motion for court approval of a settlement of this litigation, entered into by plaintiff, the Equal Employment Opportunity Commission ("EEOC"), and defendants, the Commonwealth of Pennsylvania and the Pennsylvania State Police. This action was filed by the EEOC on behalf of certain members of the State Police, alleging they were forced to retire at age 60 in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626 *et seq.* After several years of negotiations, which involved the consideration of the status of 130 individuals who may have been entitled to relief, the parties reached a settlement agreement which provides awards to 83 former state policemen in the amount of $2,643,036.43. Six individuals have filed objections to the proposed agreement. They object either because they were not included in the group to receive damages, or because they are dissatisfied with the amount they will receive. On June 3, 1991, a hearing was held and the objectors presented their grievances. At that time, we permitted the parties and objectors to submit briefs concerning the objections, and the role of the court with regard to them.

The objectors contend that the proposed settlement should be disapproved because it is unfair. It is well established that a district court generally plays a limited role in reviewing proposed settlement agreements in litigation initiated by the EEOC. The Court in *EEOC v. Consolidated Edison Co.*, 557 F.Supp. 468 (S.D.N.Y.1983) said:

> This suit is not a class action nor does it fall within any other of the limited categories of cases in which a court is called upon to determine the fairness or desirability of a proposed settlement. In approving this settlement, this court merely acknowledges that the parties have exercised the right, which they have, to discontinue this litigation.

We recognize, however, as the court did in *Consolidated Edison, supra,* that in certain instances the court may exercise an inherent power to determine the fairness and reasonableness of a proposed settlement. In such cases, "[t]he sole question before the district court in reviewing a settlement agreement is whether the agreement is fundamentally fair or just." *Moore v. San Jose,* 615 F.2d 1265, 1271 (9th Cir.1980). *See Officers for Justice v. Civil Service Com.,* 688 F.2d 615, 625 (9th Cir. 1982) (The "[u]niversally applied standard [for reviewing a settlement agreement under Rule 23(e) ] is whether the settlement is fundamentally fair, adequate and reasonable"); *Berkman v. New York,* 705 F.2d 584, 597 (2nd Cir.1983) (a district court should not approve a Title VII settlement that contains provisions that are unreasonable, unlawful or against public policy).

We recognize that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to

the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, *taken as a whole*, is fair, reasonable and adequate to all concerned." *Officers for Justice, supra,* 688 F.2d at 625 (emphasis added). Thus, absent evidence of fraud, collusion, overreaching, or apparent unreasonableness on the part of the negotiating parties, a court should not intrude upon the settlement in question, particularly where it has been achieved through extended negotiations, carefully selected criteria, and complex calculations.

■■■ There is a limited right of an individual objector to alter, or otherwise interfere with, a settlement agreement negotiated by the EEOC in an ADEA action. The EEOC is charged with "the responsibility of investigating, litigating, and, if possible, settling claims on behalf of both the general public and individual victims of discrimination." *Consolidated Edison, supra,* 557 F.Supp. at 473. Further, an individual's right to bring suit "terminates upon the filing of a suit by the EEOC to enforce such employee's ADEA-granted rights." *Id.* at 471; Section 7(c)(1) of the ADEA, 29 U.S.C. § 626(c)(1). In other words, "once the EEOC commences an enforcement suit, an employee who has failed to file his own action and on whose behalf relief is sought is not permitted to intervene as a party pursuant to Fed.R.Civ.P. 24(a)(2) in the ongoing suit." *Id.* at 472.

In the instant action, it is undisputed that the six objectors did not file suit prior to the initiation of the present action by the EEOC. "An employee who fails to file a law suit seeking redress of his ADEA-recognized rights prior to the EEOC's commencement of a suit on such employee's behalf *lacks any power to assert such rights,* regardless whether the assertion is attempted within or without the EEOC suit, or before or after judgment [or settlement] is entered." *Id.* (emphasis added). Similarly, in *EEOC v. Pan American World Airways, Inc.,* 897 F.2d 1499, 1509 (9th Cir.1990), the Court stated that: "[t]he objectors had no right to participate in the EEOC's lawsuit because they expressed their interest too late in the day. The objectors therefore have no standing to challenge the terms of the settlement agreement."

■■■ Unlike the objectors in *EEOC v. Pan American,* the six objectors here were included in the group represented by the EEOC, and thus are not completely without standing to question the *overall* fairness of the settlement agreement. To determine the reasonableness of the proposed settlement, however, we must consider the agreement taken as a whole, and not by examining the merits of individual claims. In this instance the objectors have not established the requisite fraud, collusion, unfairness, and unreasonableness that is required to reject the settlement agreement.

■■■ Three of the objectors, although not disputing the fairness of the settlement on a class-wide basis, contend that the settlement is unfair as it applies to their individual circumstances. According to *Consolidated Edison, supra,* this type of objection is insufficient to warrant a rejection of the terms of a settlement reached by the EEOC. The Court's role is not to make a *de novo* evaluation of whether the measures applied to all claimants provide each individual with a satisfactory recovery. Rather, the criteria or methodology employed by the litigants is sufficient if its terms, when applied to the entire group of individuals represented, appear reasonable. "It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice, supra,* 688 F.2d at 628.

Specifically, objectors, George Evan, Roy Titler, and Joseph Dean contend that a review of the settlement taken on the whole, rather than on an individual basis, is inappropriate. We agree that the settlement is comprised of individual components and is the product of individual reviews and calculations. However, each of the individual awards were determined by applying a uniform and general classwide formula. The formula was adjusted only to deal with

unique individual circumstances which did not fit into the general mold.

We recognize that the Court in *Officers of Justice, supra,* stated that while "maximizing the overall gain is a valid pursuit in resolving a class action, a small minority of the class members may not be asked to bear an unduly disproportionate share of the accompanying burdens." *Id.* 688 F.2d at 624 (citations omitted). However, when courts are called upon to approve settlement agreements, it is recognized that there "exists the risk that the interests of some class members may be sacrificed in the effort to achieve the 'greatest good for the greatest number.'" *Officers for Justice, supra,* 688 F.2d at 624, *quoting Mandujano v. Basic Vegetable Products, Inc.,* 541 F.2d 832, 835 (9th Cir.1976). In fact, the Court in *Consolidated Edison, supra,* emphasized that settlement distributions premised on a basis other than the merits of individual claims are common. Upon consideration of the agreement and release we believe that the EEOC's overall criteria for determining damages, as applied to all the individuals it represents, is appropriate and reasonable.

■ Titler and Evans object to the propriety of discounting lost retirement annuities to present value. We find the present value approach reasonable in this case. If the class members were to receive an undiscounted lump sum payment, they would gain a windfall because the payment could then earn interest, resulting in a receipt by the retiree of a higher amount than the annuity that was lost. The objectors argue that "the reduction of annuity benefits to present value leaves the officer with less than what they are entitled to as a matter of law and permits the Pennsylvania State Police to gain a significant economic advantage." We disagree. The class members will receive what they are entitled to because the value of the sum received at this time is greater than it would be if it were received over time in the future.

We agree that the practice of discounting *lost future earnings* to present value was abandoned by the Pennsylvania Supreme

Court, *Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1980), and is not favored by the Third Circuit. *Pfeifer v. Jones & Laughlin Steel Corp.,* 678 F.2d 453 (3d Cir.1982). The Third Circuit stated as follows:

> ... the rate of future inflation will be equivalent to future interest rates. From a pragmatic viewpoint, lost future earnings need not be discounted to present value, although the formula calls for a theoretical reduction to present worth, because the inflation and discount rates are legally presumed to be equal and cancel one another.

*Id.* at 461.

However, the Court in *Pfeifer* went on to state that "it is not necessary to go through the process of discounting lump sum awards to present value." *Id.* This statement is by no means a requirement that a federal court, or parties negotiating a settlement in a federal action, may not discount annuity benefits, or even future earnings, to present value. Rather, the Court merely emphasized that such practice is not preferred or mandated in litigation where lost future earnings are awarded. Moreover, *Pfeifer* was vacated and remanded by the Supreme Court in *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), which held that the district court erred in considering itself bound by *Kaczkowski.* The Court reasoned that a federal court may, if it so chooses, employ a present value deduction, depending on the facts of each case. Even if a present value deduction should not be employed in resolving litigation, it may nevertheless be reasonable in the context of settling this case, and we do not consider it unlawful or unreasonable.

■ Several of the objections challenge the application of the general settlement formula to the objectors' individual circumstances. These objections seek a higher award of damages based upon the measure of damages they would have used had they negotiated on their own behalf.[1] We find

---

1. As an example Joseph Dean contends that the

Commission advised him that when it calculat-

merit to only one of the objectors' claims. Titler, Dean, and Evan object that their earnings received from outside employment from 1986 until 1989 were used to offset their total damage award. The parties agreed to utilize discount percentages between 30% and 40% to offset the amount an individual would have received under the settlement formula. This was done because the Commission had intended to appeal the issue of reinstatement rights for that period, but chose instead to negotiate monetary compensation for the classmembers. Because the issue regarding reinstatement rights is disputed, the discounted percentage was used. The factors considered to determine discounted percentages for each member were whether the member tried to find employment during the relevant time period and whether he incurred medical expenses.

Titler and Evan fell into the category for those with unique circumstances, for whom the discounted percentage applied was adjusted upwards or downwards taking into account the individual's mitigation attempts. We find, with one exception, that Titler and Evan were treated no differently than any other class members who also had unique circumstances. Titler's percentage of compensation was downgraded due to his refusal to take available employment that would require him to relocate to another state. The Commission reasoned that because Titler was subject to relocation as an employee of the State Police, its decision to penalize him for failing to mitigate by relocating was reasonable. The majority of courts disagree.

It is well-settled that an ADEA claimant cannot be found to have failed to mitigate damages where he would be required to leave home for a distant location to reduce damages caused by a defendant's discrimi-

natory acts. *See Coleman v. Omaha,* 714 F.2d 804 (8th Cir.1983). "A plaintiff should not be required to move from his home in order to reduce damages caused by the defendant's unlawful acts." *Gabrielle v. Barrett, Haentjens & Co.,* 663 F.Supp. 1184 (M.D.Pa.1986); *see also Oil, Chemical & Atomic Workers Int'l Union v. NLRB,* 547 F.2d 575, 603 (D.C.Cir.1976); *Florence Printing Co. v. NLRB,* 376 F.2d 216 (4th Cir.), *cert. denied* 389 U.S. 840, 88 S.Ct. 68, 19 L.Ed.2d 104 (1967). "The long-settled rule in the labor area is that a wrongfully discharged employee need not accept, in mitigation of damages, employment that is located an unreasonable distance from his home." *Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114, 119 (4th Cir.1983). In *Spagnuolo* the Court held that the claimant could not be required to relocate to accept $12,000 a year as compared with $42,000 under his old job. The Court placed particular emphasis on ADEA claims when it stated:

> There is not authority for a contrary rule under either Title VII or ADEA; nor do we think one appropriate. As noted above, relocation, even for a temporary period, is likely to be particularly unwelcome to a victim of age discrimination, who is most likely to have substantial personal and business ties to his community. We therefore conclude that the district court did not err in concluding that Spagnuolo's continuing duty to mitigate his damages does not extend to accepting employment that is unreasonably distant from Charlotte.

*Id.*

In the present case it is undisputed that Titler visited job sites in Florida and New Jersey and assessed the market value of real estate in those areas before declining job offers. The comparative standard of

---

ed discount percentages to be applied to outside earnings, it would not consider wages earned after December 31, 1986. If this were true, only $2,310.00, rather than $31,316.06, should have been deducted from Dean's award (with the proper percentage discount applied). Dean correctly states that the parties agreed that the classwide harm would end on December 31, 1986 (the effective date of the ADEA Amendment which permitted police to continue man-

datory retirement practices). However, Dean misinterprets the Commissions representation. The parties agreed that the fourth part of the settlement formula, dealing with *prospective* classwide relief, would commence after December 31, 1986 and continue until December 31, 1989. On that ground, the deduction of outside income earned in that time period from Dean's award was appropriate.

living, large decrease in earning potential, and cost of relocating to each of these places were taken into consideration. Under these circumstances and according to well-established precedent, we find that Titler should not have been penalized for declining job offers in other states, and his award shall be adjusted to 38% of earnings for three years had he been reinstated.

With respect to Evan, he asserts that the Commission erroneously represented his interim earnings for the years of 1988 and 1989 as $46,255.08 and $46,255.08 respectively. He avers, rather that these figures should have been $20,128.53 for 1988 and $21,130.91 for 1989. While such figures may have been incorrectly stated on Evan's data sheet, the correct figures were in fact utilized to determine Evan's award. For the years 1986 through 1989, Evan earned $60,354.46 in outside income which was the amount used to offset his ultimate award.

We find that with the exception of the treatment of mitigation in Titler's case, the objectors were treated no differently than any other class member who were in similar circumstances. We note that the Commission admits that of the 27 individuals who reported earnings after retirement (from 1986 to 1989), in three instances those earnings were inadvertently not deducted for the awards to each. While this is regrettable, such omissions are de minimis when the effects are shared by the class. In light of the overall fairness of the settlement amount, these minor errors do not justify a recalculation of the settlement awards.

Finally, with respect to those objectors excluded from any relief, we are not convinced that this decision was based upon any inaccurate or incorrect judgment on the part of the EEOC. Rather, we find that the EEOC reasonably determined,

based upon the evidence available to it, that none of these objectors was forced to retire at age 60.[2] Therefore we will not discuss the objectors' attempts to clarify or explain their position, as the court is limited to determining whether the EEOC's decision to exclude these individuals was reasonable in light of the evidence known to the EEOC.[3]

The settlement amount in part was determined by applying individual calculations. The limited number of objections is a strong indication of the reasonableness and fairness of the agreement reached, and the objections presented are insufficient to invalidate that agreement.

---

**2.** Specifically, objector George McCloskey was excluded from receiving an award based upon misstatements of fact made by him in a deposition. Although he now claims that his deposition was erroneous due to a health condition which affected his testimony, we will not invalidate the Commission's decision to exclude him. Such decision, when it was made, was not unreasonable under the circumstances.

**3.** Two objectors retired during an injunction and were under the mistaken belief that they would be reinstated after the injunction. Their assumptions were incorrect and the EEOC reasonably determined that one who retires during an injunction cannot be deemed to have been forced to retire, unless he expressed otherwise.