Sandra B. DURANT and Audrey J. Isaacs, d/b/a Durant & Isaacs, Plaintiffs,

v.

TRADITIONAL INVESTMENTS, LTD., Traditional Investments, Inc., Technological Transfer Project, GmbH, Traditional Oil Trading, N.V. and B.T. Onitiri, both in his individual and representative capacities, Defendants.

No. 88 Civ. 9048 (PKL).

United States District Court, S.D. New York.

Feb. 26, 1991.

Morrison, Cohen, · Singer & Weinstein (Jonathan W. Lubell, of counsel), New York City, for plaintiffs.

B.T. Onitiri, New York City, pro se.

## ORDER AND OPINION

LEISURE, District Judge:

This is an action for the collection of attorneys' fees and costs arising out of a prior representation of defendants by plaintiffs.[1] Plaintiffs have now moved for an order awarding plaintiffs sanctions against defendant B.T. Onitiri ("Onitiri") pursuant to the inherent powers of the Court and under Rule 11 of the Federal Rules of Civil Procedure, and for an order awarding plaintiffs partial summary judgment on their first and second causes of action.[2] Onitiri has filed numerous cross-motions. The Court will not herein review the entire, tortured history of this litigation, which has been the subject of prior decisions of the Court, but will limit its review of the facts to those relevant to the instant motions.

### Background

On August 27, 1988, Onitiri, on behalf of himself and Limited, entered into a retainer agreement pursuant to which the law firm of Durant & Isaacs would represent Onitiri and Limited in the parent action.[3] In the following four months, Durant & Isaacs expended a significant amount of time and money in an effort to settle the parent action. According to plaintiffs, Durant & Isaacs presented Onitiri with bills totalling $141,760.43, which, after deducting a $10,-000 retainer paid by Onitiri on August 29, 1988, left a balance due of $131,760.43, which remains unpaid to this day.

Onitiri, however, asserts that in late October 1988, plaintiff Sandra Durant stated that her firm would not continue to represent Onitiri and Limited in the parent action unless $15,000 to $18,000 was immediately paid to her firm as past due legal fees. By letter dated December 19, 1988, Onitiri formally terminated the retainer

1. The prior action, *Traditional Investments, Ltd. v. Topgallant Group, Inc.*, 88 Civ. 1379 (PKL), (the "parent action"), was settled before trial.

2. Defendants Traditional Investments, Ltd. ("Limited"), Traditional Investments, Inc. ("Incorporated"), Technological Transfer Project GmbH ("GmbH") and Traditional Oil Trading, N.V. ("N.V."), will be collectively referred to in this opinion as the "corporate defendants."

3. The parties disagree as to whether the other corporate plaintiffs in the parent action, namely Incorporated, GmbH and N.V., all defendants in the instant action, were also represented by Durant & Isaacs in the parent action.

agreement with Durant & Isaacs, stating as his reasons for doing so his claims that Durant & Isaacs had effectively withdrawn its services in late October or early November, had overbilled him, and had misled him.

On December 21, 1988, plaintiffs filed the complaint in this action, seeking to collect the legal fees allegedly due them for their work on the parent action. Plaintiffs named as defendants in this action Onitiri and Limited, as well as the other party plaintiffs in the parent action (*i.e.*, Incorporated, GmbH and N.V.). On or about December 30, 1988, Onitiri and the corporate defendants in the instant action, as plaintiffs in the parent action, settled the parent action in the amount of $3,050,000. On January 9, 1989, the Court signed a Stipulation and Order directing Berliner Bank International, S.A. to deposit the sum of $200,000 in an interest-bearing account with Bank of Boston International (the "escrow fund"). Berliner Bank subsequently complied with the Court's order.

Also on January 9, 1989, defendants in the instant action served an answer with counterclaims upon plaintiffs. The introductory sentence of the answer reads as follows: "Defendants in the ancillary proceeding, by their attorney-in-fact, B.T. Onitiri, Pro Se, as and for his verified answer to the complaint, respectfully states as follows...." The answer is signed by "B.T. Onitiri, Pro Se for Ancillary Defendants." [4]

Thereafter, settlement discussions commenced between the parties in this action, and continued until they broke down in the fall of 1989 when plaintiffs required, as part of the settlement and pursuant to § 701 of the New York Business Corporation Law, resolutions from the corporate defendants in this action authorizing payment of plaintiffs' fees from the escrow fund. In response to this request, Onitiri claimed that he did not have the power to secure such resolutions.

On or about October 2, 1989, Onitiri served on plaintiffs an amended answer, erroneously denominated "Answer," and on October 6, 1989, Onitiri served on plaintiffs a second amended answer, erroneously denominated "First Amended Answer." [5] Each of these answers asserted as an affirmative defense that " 'Indispensable' parties so designated by plaintiffs ... have not been joined in this action pursuant to Federal Rules [*sic*] of Civil Procedure 19, subjecting this lawsuit to dismissal under Rules 19 and 12 of the Federal Rules of Civil Procedure." Amended Answer ¶ 14; Second Amended Answer ¶ 14. Shortly thereafter, in late October 1989, Onitiri moved to dismiss the complaint in this action on the ground, *inter alia*, that Incorporated, GmbH and N.V. were indispensable parties to the litigation, which parties had purportedly never been served. After extensive briefing, including a 92–page reply brief submitted by Onitiri in support of his motion, the Court on March 22, 1990, ordered plaintiffs to amend service on all five defendants because of technical deficiencies in the original service that had been performed in December 1988 ("March 22 Order").[6] In addition, the Court found that "Onitiri's guiding principle [in this litigation] appears to be expediency rather than candor and forthrightness," March 22 Order at 13, and thus the Court imposed a sanction in the amount of $1,000 on Onitiri "in the hope that future duplicity might be deterred." March 22 Order at 13.

In response to the Court's March 22 Order, plaintiffs attempted to re-serve Onitiri

---

4. As the Court has noted in the past, although Onitiri's precise position within the defendant corporations has remained uncertain, it has been clear to the Court that Onitiri has exercised great control over those corporations, so much so that they have been described as "Mr. Onitiri's companies." *See Durant and Isaacs v. Traditional Investments, Ltd., et al.,* 88 Civ. 9048 (PKL), Order and Opinion (March 22, 1990) at 11 and n. 5, 1990 WL 33611.

5. Onitiri's various answers will be referred to herein by their correct titles.

6. The Court also held that Onitiri was an authorized agent of the corporate defendants for receipt of service of process when he was served in December 1988. Accordingly, the Court found that Onitiri's indispensable parties motion was rendered moot. March 22 Order at 11 and n. 6.

and the corporate defendants.[7] Plaintiffs served Onitiri by having a process server hand deliver the amended summons and complaint to Onitiri's New York office and New York residence, leaving the papers with one Ms. Paulette Owens, formerly an attorney practicing in this Court,[8] and now identified by plaintiffs as Onitiri's co-tenant and business associate. The papers were then mailed by the process server to Onitiri at his New York address.[9] Plaintiffs also served Onitiri by having the papers hand delivered to Onitiri's London residence, leaving them with a female relative of Onitiri at that address, followed by mailing the papers to him at that address.

Plaintiffs re-served Limited by having a process server hand deliver the papers to Limited's New York office, leaving the papers with Limited's New York business agent. Plaintiffs also had a United Kingdom process server hand deliver copies of the papers to Limited's registered office in the Isle of Man, and had a New York process server hand deliver copies of the papers to the Office of the New York Secretary of State, followed by mailings of the papers to Limited. Plaintiffs re-served Incorporated by having a Delaware process server deliver a copy of the papers upon the Office of the Delaware Secretary of State.

Plaintiffs re-served GmbH by having a United Kingdom process server hand deliver the papers to GmbH's General Manager, namely Limited, at Limited's registered office in the Isle of Man. Plaintiffs also had the papers served by hand delivery to the Office of the New York Secretary of State, followed by mailing the papers to GmbH. Plaintiffs re-served N.V. by having a Curacao, Netherlands Antilles process server serve the papers in accordance with the laws of the Netherlands Antilles. Plaintiffs also served N.V. by having the papers hand delivered to the Office of the New York Secretary of State, followed by mailing the papers to N.V.[10]

In the meantime, on April 2, 1990, Onitiri filed a motion for reargument with regard to the Court's March 22 Order. This motion was denied by memorandum order on April 25, 1990, the Court imposing an additional sanction of $500 on Onitiri for his patently frivolous and dilatory motion for reargument.

By letter dated June 25, 1990, Onitiri informed the Court and plaintiffs that he had recently learned that all of the corporate defendants in this action "had been 'struck off' the Companies Registry of the Isle of Man, U.K., Netherlands Antilles, Germany and dissolved in the State of Delaware," and thus they "no longer existed and that all power of attorney had been revoked rendering me incapable of representing the corporations in any respect." Response Pursuant to Court Order of June 11: Notice of Compliance and Non-compliance of Parties With Court Order ("June 25 letter"), ¶ 3. Onitiri then argued yet again that

[i]t seems clear that the original service of process of December 22, 1988 may not have been amended pursuant to Rule 4(h) of the Federal Rules of Civil Procedure for the above reasons in addition to other reasons previously cited as grounds for

7. As alleged in the complaint, Onitiri is a resident of the United Kingdom; Limited was incorporated in the United Kingdom; Incorporated was incorporated in Delaware; GmbH was incorporated in the Federal Republic of Germany; and N.V. was incorporated in Curacao, Netherlands Antilles.

8. Owens resigned in 1987 from the New York State bar following the filing of nine complaints of professional misconduct with the Departmental Disciplinary Committee. The complaints asserted neglect of matters in litigation, commingling of escrow funds and use of escrow funds for personal expenses. *See Matter of Owens,* 128 A.D.2d 279, 516 N.Y.S.2d 9 (1st Dep't 1987).

According to the records of this Court, Owens' name was struck from the rolls of this Court on August 4, 1987.

9. By memorandum order dated September 12, 1990, the Court held that Onitiri was thus properly served at his place of business in New York. The Court expresses no opinion herein as to the propriety of the other methods of service employed by plaintiffs.

10. Due to local rules and customs, plaintiffs were required to retain local counsel to effectuate service in England and the Netherlands Antilles.

insufficient process and service of process. Therefore, the "technical imperfections" with respect to the original summons may not have been corrected. Indispensable corporate defendants may not have been joined in this action rendering amended service of process insufficient and original process void.

June 25 letter, ¶ 8.

Almost as if it were an aside, Onitiri also revealed for the first time to the Court and plaintiffs that, on February 1, 1988, all of the corporate defendants in this action had "irrevocably assign[ed] all right, title and interest in the proceeds" from the parent action to Onitiri, June 25 letter, Exhibit A, and that all monies in the escrow fund created in the instant action were similarly assigned by the corporate defendants to Onitiri on December 20, 1988. June 25 letter, Exhibit C.

Plaintiffs thereafter brought the instant motion for sanctions and partial summary judgment. With respect to their motion for sanctions, plaintiffs argue that, given Onitiri's revelation of the corporate defendants' assignments

> [i]t is now apparent that there was no basis for Onitiri to back away from the August, 1989 settlement; there was no need for motion practice regarding service on the four corporations; there was no need for decisions by the 'Court on these issues. Countless hours of Judge Leisure, Magistrate Buchwald,[11] plaintiffs' counsel, and plaintiffs were wasted for no good reason. Plaintiffs incurred tens of thousands of dollars in obligations to [their counsel] based upon Onitiri's deliberate concealment of the facts and fabrication of a non-existent issue. In retrospect, Onitiri's scheme is clear. After agreeing to a settlement in which Durant & Isaacs were to receive a substantial portion of the monies owed them, Onitiri suddenly devised a ploy he hoped would enable him to walk away with the entirety of the escrow fund. He claimed he could not obtain the corporate resolu-

tions, deliberately causing the settlement to fall apart. (Had he wished to consummate the settlement, he would have immediately revealed that he was the only *real* party defendant.) He then tried another ploy (through motion practice) to have the complaint dismissed and the escrow moneys released to him. He did not shrink from lying about the corporate defendants in furtherance of this scheme. Now that his scheme has been foiled, he unabashedly admits what he has known from the beginning. The corporations were strangers to the suit.

Plaintiffs' Memorandum in Support of Motion for Sanctions and Partial Summary Judgment ("Plaintiffs' Mem.") at 6–7 (emphasis in original). With respect to that part of their motion seeking partial summary judgment, plaintiffs rely on a number of statements by Onitiri in which plaintiffs claim Onitiri admits liability for a substantial portion of the fees plaintiffs seek.

*Discussion*

I. Plaintiffs' Motion for Sanctions

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless in-

---

11. This matter was referred to Magistrate Buchwald in March 1989 for the purpose of settle-

ment negotiations.

crease in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

The Second Circuit has explained that "a violation of rule 11 is triggered in either of two situations: '... when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.'" *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 705–06 (2d Cir.1990) (quoting *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)) (emphasis in original). The person signing the "pleading, motion, or other paper" thus has an affirmative duty to conduct a reasonable inquiry into its viability before signing it. *See Eastway Construction, supra*, 762 F.2d at 253. In assessing the reasonableness of this inquiry, the Court must consider all of the circumstances, and apply an objective standard. *See O'Malley, supra*, 896 F.2d at 706. "Once a violation [of Rule 11] is shown to exist, the district court may not ignore the command of the statute: 'sanctions *shall* be imposed.'" *O'Malley, supra*, 896 F.2d at 709 (reversing district court for failure to impose Rule 11 sanctions) (quoting *Eastway Construction, supra*, 762 F.2d at 254) (emphasis in original); *see also International Shipping Company, S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). "'Greater atten-

tion by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory and abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.'" *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21 (2d Cir.1990) (quoting Fed. R.Civ.P. 11 advisory committee's note, reprinted at 97 F.R.D. 165, 198 (1983)).

In the instant case, Onitiri has consistently argued in numerous pleadings and motion papers signed by him that the corporate defendants are indispensable parties in this action, and, accordingly, that plaintiffs' failure to serve the corporate defendants properly requires dismissal of this action. As a result of Onitiri's assertions of indispensability, plaintiffs have been required to engage in extensive motion practice to oppose Onitiri's various attempts to have this action dismissed. In addition, plaintiffs have incurred substantial costs in attempting to perfect service of process upon the corporate defendants, employing process servers from Albany to London, and from Curacao to the Isle of Man. Significant as well is the amount of the Court's time that has been taken up in reviewing and deciding issues arising from Onitiri's claims that the corporate defendants are indispensable parties.[12]

Onitiri's June 25 letter to the Court, in which he informed the Court that the corporate defendants no longer exist, appears to have been an attempt to lay the foundation for yet another argument regarding indispensability, and, in turn, for dismissal of this action. *See* June 25 letter, ¶ 8 ("Indispensable corporate defendants may not have been joined in this action rendering amended service of process insufficient and original process void."). However, Onitiri hoisted himself with his own petard by revealing in the June 25 letter that, prior to the filing of this action, the corporate defendants had irrevocably assigned to him "all right, title and interest in the proceeds" from the parent action, including all

---

12. Onitiri continued to argue that the corporate defendants were indispensable parties as recently as August 1990. *See Durant and Isaacs v.*

*Traditional Investments, Ltd., et al.,* 88 Civ. 9048 (PKL), Memorandum Order (September 12, 1990) at 7, 1990 WL 135731.

monies in the escrow fund. June 25 letter, Exhibits A and C. Thus, the corporate defendants obviously were not indispensable parties by any stretch of the meaning of Federal Rule of Civil Procedure 19. *See Overseas Development Disc Corp. v. Sangamo Construction Company, Inc.*, 686 F.2d 498, 505 (7th Cir.1982) (holding that an assignor is not an indispensable party and "would not even be a person 'to be joined if feasible'" under Fed.R.Civ.P. 19(a)); *Malman v. United States*, 202 F.2d 483 (2d Cir.1953); *Bank of Boston International of Miami v. Arguello Tefel*, 644 F.Supp. 1423, 1425 (E.D.N.Y.1986); *R.C. Hedreen Co. v. Crow Tribal Housing Authority*, 521 F.Supp. 599, 609 (D.Mont.1981); *Bastille Properties, Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175, 178 (S.D.N.Y. 1979); *Federal Deposit Insurance Corp. v. Huntington Towers, Ltd.*, 443 F.Supp. 316, 319-20 (E.D.N.Y.1977) ("An assignor who has assigned all right and interest to another need not be joined in an action involving the property assigned because complete relief can be accorded in his absence and, furthermore, he has no interest to protect."); *Hill & Range Songs, Inc. v. Fred Rose Music, Inc.*, 58 F.R.D. 185, 189-90 (S.D.N.Y.1972); C. Wright & A. Miller, 7 *Federal Practice and Procedure* § 1613, at 188-92 (1986); J. Moore, 3A *Moore's Federal Practice* ¶ 19.14[1], at 19-244 to 19-248 (1990).

Onitiri makes no serious argument that his claims of indispensability were "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification or reversal of existing law," *Eastway Construction, supra*, 762 F.2d at 254, nor does the Court believe he could. Instead, Onitiri has made, and continues to make, the entirely frivolous argument that *plaintiffs* somehow designated the corporate defendants as indispensable parties by asking for corporate resolutions authorizing the settlement of this action, and that Onitiri merely "adopted" plaintiffs' view of the need to join the corporate defendants. This specious reasoning fails on at least two grounds. First, the mere fact that plaintiffs requested corporate authorization resolutions during settlement negotiations, pursuant to the New York Business Corporation Law, did not render the corporate defendants indispensable in the litigation within the meaning of Rule 19 or signify that plaintiffs considered them to be such. Indeed, plaintiffs consistently disputed Onitiri's contentions that the corporate defendants were indispensable parties, or that plaintiffs had so designated them.

Second, Onitiri's argument that he innocently adopted what he claims to be plaintiffs' designation of the corporate defendants as indispensable parties, is completely undermined by the incontrovertible fact that Onitiri *knew*, at all times during this litigation, that the corporate defendants had no interest whatsoever in the proceeds of the parent action or in the escrow fund created therefrom.[13] Despite this knowledge, Onitiri was less than candid with the Court and with plaintiffs, asserting that the corporate defendants continued to hold interests in the settlement proceeds and escrow fund. *See, e.g.*, Memorandum in Support of B.T. Onitiri's Motion to Quash Summons and Service of Process and to Dismiss Plaintiffs' Complaint (dated October 27, 1989) at 14 ("Each named plaintiff in the primary suit may be entitled to proceeds of the settlement. Therefore all parties with conflicting claims are considered 'indispensable.'"). Likewise, Onitiri withheld patently material information—the fact of the corporate defendants' assignments—information that, once revealed, would obviously have altered the course of this litigation and avoided much needless work and expense by plaintiffs and waste of resources by the Court.[14] This was an

---

13. Onitiri was not only the assignee of the corporate defendants' interests in the parent action proceeds and the escrow fund, but was also the assignor of those interests on behalf of the corporate defendants.

14. Onitiri's bald assertion that plaintiffs were *fully informed* of the assignments is totally unsupported by any evidence. Given the Court's past experience with Onitiri's failure to be forthright and candid, the Court simply does not believe this transparently self-serving claim. Plaintiffs' sworn statements, as well as the man-

egregious violation of Rule 11 as well. *See Blackwell v. Department of Offender Rehabilitation*, 807 F.2d 914, 915 (11th Cir. 1987) (failure to disclose release constituted violation of Rule 11); *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1539 (9th Cir.1986) (omission of "critical facts" violates Rule 11); *Itel Containers International Corp. v. Puerto Rico Marine Management, Inc.*, 108 F.R.D. 96, 102 (D.N.J.1985) ("falsity may lie in omission as well as commission"); *Sharjah Investment Company (UK) Ltd. v. P.C. Telemart, Inc.*, 108 F.R.D. 90, 92 (S.D.N.Y.1985) (opposition to motion to disclose deposition, accompanied by failure to disclose fact that deposition had already been disclosed, "is clearly a violation of the Rule 11 standard.").

The Court must conclude, based on the present facts and in light of Onitiri's well-established record in this litigation of frivolous submissions and dilatory tactics, that not only were Onitiri's arguments as to the indispensability of the corporate defendants frivolous, but that his lack of candor with respect to the corporate defendants' interests in the parent action proceeds and in the escrow fund furthered improper purposes: *i.e.*, to delay the course of this litigation and force plaintiffs to incur needless expense. In this goal, Onitiri has succeeded. Rule 11, however, mandates that it be a Pyrrhic victory: Onitiri must be sanctioned. *See O'Malley, supra*, 896 F.2d at 709.

As this Court has noted in the past, Onitiri's *pro se* status causes the Court some hesitation in awarding Rule 11 sanctions. *See* March 22 Order at 13. However, it is well-established that Rule 11 applies to *pro se* litigants, as well as attorneys and their clients. *See Yosef v. Passamaquoddy Tribe*, 876 F.2d 283, 287 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1474, 108 L.Ed.2d 611 (1990); *Maduakolam v. Columbia University*, 866 F.2d 53, 56 (2d Cir.1989); *Patterson v. Aiken*, 841 F.2d 386 (11th Cir.1988); *Kadan v. Williams*, 1990 WL 47680, 1990 U.S. Dist. LEXIS (S.D.N.Y. April 11, 1990); *Posner v. Minnesota Mining & Manufacturing Company, Inc.*, 713 F.Supp. 562, 565 (E.D.N.Y.1989); *Cavallary v. Lakewood Sky Diving Center*, 623 F.Supp. 242, 246 (S.D.N.Y.1985). Although "[w]hen a party appears *pro se*, it must be factored into the reasonableness standard," *Posner, supra*, 713 F.Supp. at 565, *"pro se* filings do not serve as an 'impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Patterson, supra*, 841 F.2d at 387 (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986)).

The same reasons that have dispelled the Court's hesitation in sanctioning Onitiri in the past, do so again with respect to the instant motion. First, Onitiri is a sophisticated and intelligent international businessman, who, after over two years of *pro se* representation in this action, including the submission of close to one thousand pages in briefs alone, is sufficiently experienced in the American legal system. His papers "show an exceptional grasp of American law for a foreign-born engineer." March 22 Order at 13. Second, to a substantial degree Onitiri's sanctionable conduct has been in the form of factual misrepresentation, both by commission and omission, the impropriety of which should be known to lawyers and non-lawyers alike. Third, the Court believes that Onitiri is continuing to receive in-house legal advice, despite his putative *pro se* status. These factors, considered in combination with the facts of this case, convince the Court that Onitiri's conduct giving rise to the instant motion has been wholly unreasonable and improper, and thus requires the imposition

ner in which they have prosecuted this action, including their enormous efforts to serve the corporate defendants, persuade the Court that they were unaware of the assignments. Moreover, given the very closely held nature of the corporate defendants, the apparent lack of adherence to corporate formalities, and the fact that the corporate defendants were allowed to dissolve, the Court does not believe that plaintiffs' failure to discover the assignments reflects a lack of diligence so as to alter the Court's findings with respect to the instant motion.

of appropriate sanctions pursuant to Rule 11.[15]

▮ In order to support the award of court-ordered attorney's fees and expenses, the party seeking such an award must provide the Court with contemporaneous time and expense records specifying, for each attorney performing work on a matter, the date, the hours expended, and the nature of the work done. *See New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir. 1983). Fees and expenses must be necessary and reasonable. *See Nemeroff v. Abelson,* 94 F.R.D. 136, 146 (S.D.N.Y.1982), *aff'd,* 704 F.2d 652 (2d Cir.1983). Accordingly, plaintiffs shall provide the Court with such records, and shall indicate with respect to each fee or expense entry, or category of such entries, the causal link between Onitiri's sanctionable conduct and the entry or category of entries.[16] From this information, the Court will, within its discretion, calculate the amount of the sanction necessary and proper to reprove Onitiri and to compensate plaintiffs for their attorneys' fees and expenses arising from Onitiri's misconduct. *See International Shipping, supra,* 875 F.2d at 392.

## II. Plaintiffs' Motion for Partial Summary Judgment

▮ Plaintiffs have also moved for summary judgment with respect to their first and second claims, arguing that certain statements Onitiri has made are, in effect, concessions of liability warranting the granting of summary judgment.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317,

322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.,* 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.,* 867 F.2d 102, 107 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also Trebor Sportswear Co. v. Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989).

Having reviewed the documents submitted by plaintiffs in support of their summary judgment motion, the Court cannot conclude that "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor

---

**15.** Because the Court will impose sanctions under Rule 11, it need not consider the necessity of imposing sanctions pursuant to its inherent authority.

**16.** The Court will not, however, sanction Onitiri for papers signed by any of the several attorneys who have, at times, represented Onitiri during this litigation.

of the non-moving party." *Murray, supra,* 844 F.2d at 992. The reasons for the Court's finding that these documents are, by themselves, insufficient to support an award of summary judgment are as follows:

—Onitiri's letter dated December 19, 1988, although noting that plaintiffs' monthly bills "were your entitlement," also stated Onitiri's "total disagreement" with plaintiffs' method of calculating their fees and expressed his opinion that plaintiffs had withdrawn as his counsel in early November, resulting in a reduced settlement amount. Affidavit of Jonathan W. Lubell, Esq., sworn to on July 26, 1990, ("Lubell Aff."), Exhibit I.[17]

—In a letter to the Court dated January 11, 1989, Onitiri stated that he did not object to payment of costs to third parties, such as court reporters and messengers. However, he also stated therein that payment was subject to "ratification of the need therefor and verification." Lubell Aff., Exhibit K. Such payment was, therefore, conditional, and Onitiri now contests the necessity of those expenses.

—On March 15, 1989, John W.E. Bowen IV, Esq. ("Bowen"), Onitiri's attorney for a brief period of time, made an offer of settlement in the amount of $72,492.49. Lubell Aff., Exhibit L. However, under Fed. R.Evid. 408, such evidence "is not admissible to prove liability for or invalidity of the claim or its amount." *See Trebor Sportswear, supra,* 865 F.2d at 510 ("In furtherance of the public policy of encouraging settlements and avoiding wasteful litigation, Rule 408 bars the admission of most evidence of offers of compromise and settlement.").

—Apparently in March 1989, Bowen signed a stipulation stating that the defendants in this action "intend to make a motion to strike plaintiffs' Second and Third Causes of Action and to admit liability on the First Cause of Action." Lubell Aff., Exhibit M. However, there is no evidence that such an admission of liability ever followed.

—In the affidavit of Sarah Diane McShea, Esq., submitted in support of her application to be relieved as counsel for defendants, she stated "My clients are anxious to pay Durant & Isaacs what is due and owing them—approximately $131,-756.64 in billed and unbilled time and disbursements." Affidavit of Sarah Diane McShea, Esq., sworn to on October 2, 1989, ¶ 13. The Court will not, however, grant summary judgment against a party on the basis of the statement of an attorney seeking to be relieved as counsel for that party.

—On several occasions Onitiri indicated that plaintiffs would be entitled to payment in quantum meruit. *See, e.g.,* Fifth Affirmative Defense in Second Amended Answer (erroneously denominated "First Amended Answer"), ¶ 16. However, a defendant may "set forth two or more statements of a claim or defense alternatively or hypothetically," and may do so "regardless of consistency." Fed.R.Civ.P. 8(e)(2). Onitiri consistently asserted that he "has paid all charges justly due and owing to plaintiffs," *see, e.g.,* Fourth Affirmative Defense in Second Amended Answer (erroneously denominated "First Amended Answer"), ¶ 15, and thus the Court will not award summary judgment on the basis of what was, in effect, an argument in the alternative. Indeed, Onitiri asserted that he "has paid all charges justly due and owing to plaintiffs" in the same affirmative defense in which he alluded to the possibility of recovery in quantum meruit.

—The other documents submitted by plaintiffs containing vague and general expressions by Onitiri of his willingness to pay plaintiffs' legal fees are, likewise, insufficiently definite and unconditional to support an award of summary judgment, as they, like those discussed above, do not adequately "demonstrate the absence of a genuine issue of material fact." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553. Accordingly, plaintiffs' motion for partial summary judgment is denied.

## III. Onitiri's Cross–Motions

Onitiri has filed an array of cross-mo-

---

17. The Court, of course, expresses no opinion as to the merit of any of these assertions.

**52**

tions.[18] Onitiri's cross-motions seeking an order striking plaintiffs' counsel's affidavit, sustaining Onitiri's objections to plaintiffs' various submissions, granting Onitiri a continuance, and granting Onitiri leave to reply to reply to any "further supplementation or further affidavits," need not be decided, given the Court's denial of plaintiffs' motion for partial summary judgment. Onitiri's cross-motion for an order specifying the facts that appear without substantial controversy, if any, pursuant to Fed.R.Civ.P. 56(d), is denied, on the ground that doing so is not practicable on the present record and "would not materially expedite the adjudicative process." C. Wright & A. Miller, 10A *Federal Practice and Procedure* § 2737, at 460 (1983); *see also Meschino v. International Telephone and Telegraph Corp.*, 563 F.Supp. 1066, 1073 (S.D.N.Y.1983). Onitiri's cross-motion for an order "confirming that plaintiffs by filing this partial summary judgment motion, have waived a decision by this Court on the pending Motion to Strike defendant's Answer or portions thereof" is denied on the ground that there is no such motion pending. Finally, Onitiri's cross-motion for sanctions is denied on the grounds that, as discussed above, plaintiffs did not wrongfully "designate" the corporate defendants as indispensable parties, and did not fail in their duty reasonably to investigate the corporate defendants' interests prior to bringing this action.

*Conclusion*

Plaintiffs' motion for sanctions against Onitiri is granted. Plaintiffs shall serve and file on or before March 29, 1991, contemporaneous time and expense records in accordance with this order and opinion and the requirements of the Second Circuit. Onitiri shall serve and file his objections, if any, to plaintiffs' submission, on or before April 19, 1991. Onitiri is hereby warned that no extensions of this deadline will be permitted. Plaintiffs' motion for partial summary judgment is denied. Onitiri's cross-motions, to the extent they require

decision in light of this order and opinion, are denied.

SO ORDERED.

---

**18.** Several of these "cross-motions" are, in reality, simply requests that the Court deny plaintiffs' motion for partial summary judgment.