**SOCIALIST REPUBLIC OF ROMANIA, Plaintiff,**

v.

**WILDENSTEIN & CO. INC., and Daniel Wildenstein, Defendants.**

**No. 85 Civ. 2435 (DNE).**

United States District Court, S.D. New York.

March 11, 1993.

Shearman & Sterling, New York City (Jeremy G. Epstein, Karen M. Crupi, of counsel), for defendants.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

Romania commenced this action on March 29, 1985, seeking the return of two paintings by El Greco that were sold by the last monarch of Romania, King Michael, in 1947. On June 19, 1985, defendants Wildenstein & Co. Inc. and Daniel Wildenstein (collectively "Wildenstein" or "defendants") served interrogatories and a document request on plaintiff, the Socialist Republic of Romania ("Romania"). As subsequently became clear, plaintiff's response to defendants' discovery requests was deficient. On September 12, 1985, Romania's attorneys, Gadsby & Hannah, moved to withdraw as counsel in response to, *inter alia*, their client's failure to comply with discovery requests.

At a pre-motion conference held on October 3, 1985, defendants informed this Court that plaintiff had failed to produce discoverable material. Romania's counsel, however, represented to the Court that plaintiff wished to proceed with the action, and that Romania would comply with defendants' discovery requests. Accordingly, this Court denied counsel's motion to withdraw, ordered that Romania participate in good faith in the discovery process, and directed Wildenstein to move to compel discovery in the event that Romania failed to comply with this Court's order.

Romania failed to produce requested documents. Therefore, on November 15, 1985, Wildenstein moved to compel discovery. On December 6, 1986, this Court granted defendants' motion, and ordered Romania to produce the requested documents.

Once again, Romania failed to adhere to this Court's order, and refused to produce discoverable material. On January 16, 1986, Romania's counsel renewed their motion to withdraw, and advised this Court that Romania "had once again lapsed into a state of non-cooperation and non-communication." This Court denied counsel's motion to withdraw and, on January 23, 1986, warned Ro-

---

Shea & Gould, New York City (Leon P. Gold, of counsel), for plaintiff.

mania that the case would be dismissed with prejudice if Romania failed to comply with the Court's discovery orders. Finally, this Court ordered Romania to produce discoverable material by January 31, 1986. Romania failed to produce the documents covered by this order.

On January 31, 1986, plaintiff's counsel requested additional time in which to comply with this Court's order. On February 10, 1986, defendants informed the Court that plaintiffs still had not complied with this Court's discovery orders. On February 13, 1986, Romania's counsel informed the Court that Romania would appear before the Court on the morning of February 14, 1986, in order to clarify its position with regard to discovery. Romania failed to appear before this Court, did not offer any submission to this Court to justify its failure to comply with outstanding discovery orders, and severed communication with the Court.

Romania's repeated failure to comply with this Court's discovery orders and the legitimate discovery demands made by defendants caused the continuation of this action to be an exercise in futility. Accordingly, by an order dated February 20, 1986, this case was dismissed with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 37(b)(2)(C). Romania did not appeal this dismissal.

Instead, Romania pursued an action in another forum. In February 1987, Romania served defendants with a summons to appear before a Romanian court on May 3, 1987. *See* Defendants' Exhibit, ("Wildenstein Ex.") I. Wildenstein did not appear before the Romanian court. *See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion Pursuant to Rule 60(b)(6) For Relief from the Order Dismissing the Action,* ("Defendants' Memorandum") at 6. On August 5, 1987, Romania informed Wildenstein that the Romanian court had rendered judgment against defendants and that this judgment would be enforced in the United States. *See* Wildenstein Ex.N. There is no record of any attempt by plaintiff to enforce this purported judgment in the United States.

In December 1989, the Socialist Republic of Romania was overthrown. Plaintiff now moves the Court, pursuant to Rule 60(b)(6), for relief from the order of dismissal entered by this Court more than six years ago. Plaintiff avers that the current Romanian government is willing to participate in discovery.

## DISCUSSION

### A. *Plaintiff's Rule 60(b)(6) Motion*

 Federal Rule of Civil Procedure 60(b)(6) provides that "upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment ... [for any] reason justifying relief from the operation of the judgment." Fed. R.Civ.P. 60(b). A motion made pursuant to Rule 60(b)(6) must be "made within a reasonable time" of the date that such judgment becomes final, *id.*, and may be granted by the Court only upon "a showing by the moving party of 'exceptional circumstances.'" *Gwen Sportswear, Inc. v. State Mutual Life Assurance Co.,* 1991 WL 130892, *1, 1991 U.S.Dist. LEXIS 9165, *3 (S.D.N.Y. July 3, 1991) (citation omitted); *see also Federal Deposit Ins. Corp. v. Sarandon,* 763 F.Supp. 757, 760 (S.D.N.Y.1991) (quoting *Klapprott v. United States,* 335 U.S. 601, 614–15, 69 S.Ct. 384, 390–91, 93 L.Ed. 266 (1949)) (Rule 60(b)(6) requires "that the reason be one 'justifying' relief—i.e., that the circumstances be extraordinary and such as to make relief necessary in the interest of justice."). Thus, Rule 60(b)(6) "may be invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule." *Kya-Hill v. Davidson,* 1990 WL 129177, *1, 1990 U.S.Dist. LEXIS 11468, *3 (S.D.N.Y. Aug. 30, 1990) (citing *Nemaizer v. Baker,* 793 F.2d 58, 63 (2d Cir.1986)). In evaluating the propriety of a Rule 60(b)(6) motion, a district court must "balance[ ] the interest of granting [the] motion to accomplish justice against the interest of finality of litigation." *Harman v. Pauley,* 678 F.2d 479, 481 (4th Cir. 1982). When a movant is able to demonstrate that the interests of justice favor vacatur, Rule 60(b)(6) "allows a district court to vacate its own final judgment.... The Rule gives the Court such authority to accomplish

justice and leaves such determinations to its discretion." *Id.* at 480.

■ As an initial matter, plaintiff's Rule 60(b)(6) motion is not timely. A Rule 60(b)(6) motion must be "made within a reasonable time" of the date that the judgment it seeks to have vacated becomes final. *See* Fed.R.Civ.P. 60(b). Plaintiff filed its Rule 60(b)(6) motion in September 1992. Thus, Romania allowed more than six years to pass after final judgment was entered, it allowed five years to pass after its attempt to pursue this action in a Romanian court, and it allowed more than two years to elapse between the fall of the Ceausescus government and the filing of this motion. Romania has proffered no credible evidence that its delay in filing the instant motion was reasonable. Romania's ground for this motion is that Romania's "attempt to recover [the paintings that are the subject of this action] was sabotaged by the corrupt and illegitimate communist regime of the Ceausescus." *Plaintiff's Memorandum of Law in Support of its Motion Pursuant to Fed.R.Civ.P. 60(b) for Relief From the Order Dismissing the Action,* ("Plaintiff's Memorandum In Support") at 2. Even assuming, *arguendo,* that this allegation would justify granting a Rule 60(b)(6) motion, it fails to account for the more than two year delay between the installation of the current Romanian government and the filing of this motion. Courts in this circuit routinely have held that such a delay constitutes grounds for the denial of a Rule 60(b)(6) motion. *See, e.g., PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983) (one year delay unreasonable under Rule 60(b)(6)); *Fustok v. Conticommodity Serv. Inc.,* 122 F.R.D. 151, 158 (S.D.N.Y.1988), *aff'd,* 873 F.2d 38 (2d Cir. 1989) (two year delay unreasonable); *Menashe v. Sutton,* 90 F.Supp. 531, 533 (S.D.N.Y.1950) (two year and four month delay unreasonable).

■ Moreover, Romania has failed to demonstrate that extraordinary circumstances justify granting its Rule 60(b)(6) motion. Succinctly stated, plaintiff claims that the Ceausescus regime, after filing this action and hiring attorneys to prosecute this action, corruptly decided to have this case dismissed with prejudice pursuant to Rule 37(b)(2)(C). Based on this improbable conclusory assertion, Romania claims a right to relief under Rule 60(b)(6). Romania's claim is devoid of merit.

Rather than some Machiavellian scheme designed to defraud the Romanian peoples, Romania's actions are best characterized as a deliberate litigation strategy. In spite of the fact that Wildenstein submitted to discovery, Romania chose to impede the discovery of material that might have vindicated defendants. Although this Court repeatedly admonished Romania to comply with legitimate discovery demands, Romania's response was to promise compliance but to deliver nothing. When plaintiff realized that this case would not proceed in the United States absent compliance with this Court's discovery orders, Romania sought a more favorable forum— the courts of Romania. Rule 60(b) will not afford plaintiff relief from the consequences of its litigation strategy. *See Laverty v. Savoy Indus.,* 1992 WL 296413, *1, 1992 U.S.Dist. LEXIS 15056, *3–*4 (S.D.N.Y. Oct. 6, 1992). Movant's "interest in undoing the results of a litigation strategy which, in hindsight, appears unwise fails to outweigh the judiciary's interest in the finality of judgments." *Wagner Spray Tech Corp. v. Wolf,* 113 F.R.D. 50, 51 (S.D.N.Y.1986).

■ Furthermore, Romania is not relieved of responsibility for the consequences of its litigation strategy merely because it is a nation-state whose government has changed. An analogy may be drawn to a hypothetical multi-national corporation ("Jamo, Inc.") whose management has been ousted but which, under former management, litigated a case in this Court and lost. Jamo Inc. clearly could not prevail on a Rule 60(b)(6) motion merely because it claimed that its former management was corrupt and therefore had failed to pursue a winning litigation strategy. One reason why Jamo Inc., the hypothetical corporation, could not win such a motion is that a change in management is not an extraordinary event—management changes regularly, and to allow such an event to support a Rule 60(b)(6) motion would wholly negate the finality of judgments. *See United*

States v. Besser Manuf. Co., 125 F.Supp. 710, 713 (E.D.Mich.1954); see also In re 1330 19th St. Corp., 101 B.R. 397, 398 (D.D.C.Bankr. 1989) (change in ownership or control is not the type of changed circumstance contemplated by Rule 60(b)). Similarly, governments regularly change, yet each is in privity with its predecessor. See, e.g., Guaranty Trust Co. v. United States, 304 U.S. 126, 137, 58 S.Ct. 785, 791, 82 L.Ed. 1224 (1938) (citation omitted) ("[T]he rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it."); The Sapphire, 78 U.S. (11 Wall.) 164, 168, 20 L.Ed. 127 (1871) ("The reigning sovereign represents the national sovereignty, and that sovereignty is continuous and perpetual ... the sovereignty does not change, but merely the person or persons in whom it resides.... A change in such representative works no change in the national sovereignty or its rights."). In the context of democratically elected governments, those who govern periodically change. In other systems, and throughout history, governments change when political systems are altered or when the regime in power falls out of favor. Such a change in government, or the fact that a former regime pursued a different litigation strategy than would the government currently in power, does not constitute an extraordinary event sufficient to support a Rule 60(b)(6) motion.

Thus, plaintiff has failed to demonstrate that extraordinary circumstances justify an exercise of this Court's discretion to vacate the final judgment entered in this case. In addition, plaintiff's motion is untimely. It would be inappropriate to subject defendants to the prejudice inherent to such a delay, to force defendants to expend resources to defend this suit at this time, or to ignore policy considerations favoring finality of litigation. In sum, after balancing the equities, this Court finds that it would not serve the interests of justice to grant plaintiff's Rule 60(b)(6) motion. Plaintiff's motion must therefore be denied.

B. *Defendants' Request That Rule 11 Sanctions Be Imposed On Romania*

■ In their memorandum of law in opposition to plaintiff's Rule 60(b)(6) motion, defendants request that sanctions be imposed on Romania pursuant to Fed.R.Civ.P. 11. Further, defendants request sanctions in an amount that would compensate defendants for expenses associated with responding to Romania's Rule 60(b)(6) motion. *See Defendants' Memorandum* at 20–21.

This Court will not hesitate to impose Rule 11 sanctions when, for example, a pleading is interposed for an improper purpose, or where, " 'after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.' " *Durant v. Traditional Inv., Ltd.,* 135 F.R.D. 42, 47 (S.D.N.Y.1991). In light of the standard for the imposition of Rule 11 sanctions in this Circuit, defendants have not demonstrated that sanctions are appropriate. Accordingly, Rule 11 sanctions will not be imposed.

CONCLUSION

For the reasons discussed above, Romania's Rule 60(b)(6) motion is DENIED. Defendants' request that Rule 11 sanctions be imposed on plaintiff is also DENIED.

SO ORDERED.