**P.T. BUSANA IDAMAN NURANI, Plaintiff,**

v.

**MARISSA by GHR INDUSTRIES TRADING CORPORATION and Marissa Limited, Defendants.**

**No. 88 Civ. 7370 (DNE).**

United States District Court, S.D. New York.

Aug. 23, 1993.

---

Solomon, Weiss & Moskowitz, P.C., New York City (Richard L. Garbus, of counsel), for plaintiff.

Reisman, Peirez, Reisman & Calica, Garden City, NY (Joseph Capobianco, of counsel), for defendants.

### MEMORANDUM & ORDER

EDELSTEIN, District Judge:

In an order dated April 16, 1990, this Court dismissed P.T. Busana Idaman Nurani's ("plaintiff" or "BIN") action for want of prosecution under Federal Rule of Civil Procedure ("Rule") 41 and Rule 27 of the Joint Rules of the United States District Courts for the Southern and Eastern Districts (the

"Local Rules"). Plaintiff has moved to restore this case to the active docket under Rule 60(b)(6).

### Background

In this breach of contract action against GHR Industries Trading Corporation and Marissa Limited (collectively, "defendants" or "GHR"), plaintiff seeks to recover damages incurred when GHR failed to pay for 955 dozen dresses shipped by plaintiff to defendants. Plaintiff is an Indonesian corporation located in Jakarta. BIN obtained a default judgment on December 19, 1988 due to defendants' failure to file a timely answer. Honorable John M. Walker, to whom this case was originally assigned, vacated the default judgment in a Memorandum & Order dated April 28, 1989, because defendants proffered a potentially viable defense. The case was reassigned to this Court in December 1989. In April 1990, the parties stipulated to an extension of time for defendants to respond to plaintiff's interrogatories. This represents the final entry on the docket sheet until this Court dismissed the case in April 1991 for failure to prosecute under Local Rule 27 and Rule 41.

Plaintiff is currently represented by Mr. Richard L. Garbus, of Solomon, Weiss & Moskowitz, P.C. At the time of filing this action in October 1988, however, plaintiff was represented by another attorney, which this Memorandum will refer to as "Former Counsel." In early 1989, Former Counsel joined the legal staff of Pan American World Airways Incorporated ("Pan Am"), but continued to handle this matter. Plaintiff asserts that "[t]he last communication BIN had with [Former Counsel] was [a] letter [from her] dated February 17, 1990. Thereafter she simply disappeared." *Plaintiff's Memorandum of Points and Authorities in Support of Motion to Restore Case to Court Docket* ("Plaintiff's Memo"), at 5. From March 1990 through April 1992, Mr. Chandra Sentosa, BIN's Assistant Director since 1988, stated in affidavit that plaintiff made seven separate attempts to contact Former Counsel either by mail or telex,[1] none of which received a

---

1. These attempts were made on March 6, 1990, October 9, 1990, March 22, 1991, June 14, 1991,

response. *Affidavit of Mr. Chandra Sentosa* ("Sentosa Aff.") at ¶ 9; *Plaintiff's Memo,* at 6. In June 1992, after Pan Am had ceased doing business, BIN sent a representative to New York and engaged Coudert Brothers in an effort to locate Former Counsel, but this too-proved unsuccessful. *Sentosa Aff.,* at ¶ 9; *Plaintiff's Memo,* at 6. Plaintiff asserts that it did not learn that its case had been dismissed until early this year, when it retained yet another law firm to obtain the case file from the Federal Records Center in Bayonne, New Jersey. *Sentosa Aff.,* at ¶ 10. In a letter dated March 10, 1993, plaintiff requested permission to make this motion, which is dated March 25, 1993.

## Discussion

■ Rule 60(b)(6) provides that "the court may relieve a party ... from a final judgment, order, or proceeding for ... any ... reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Such relief "is appropriate only in cases presenting 'extraordinary' circumstances," such as when the judgment may work an extreme hardship. *First Fidelity Bank, N.A. v. Government of Antigua & Barbuda,* 877 F.2d 189, 196 (2d Cir.1989) (citing *Ackermann v. United States,* 340 U.S. 193, 202, 71 S.Ct. 209, 213, 95 L.Ed. 207 (1950)); *Nemaizer v. Baker,* 793 F.2d 58, 63 (2d Cir.1986); see *Mendell v. Gollust,* 909 F.2d 724, 731 (2d Cir. 1990), *aff'd,* 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991). Vacating an order under Rule 60(b)(6) is not appropriate where "[n]o additional claims are advanced," and where movants "simply argue on the same facts that there are 'extraordinary circumstances' justifying the exercise of the district court's equitable powers." *Cruickshank & Co. v. Dutchess Shipping Co.,* 805 F.2d 465, 469 (2d Cir.1986). " '[R]elief under [Rule 60(b)(6) ] is available only when the movant acts in a timely fashion and asserts a ground justifying relief that is not encompassed within any of the first five clauses.' " *Wagner v. New York Univ. Medical Ctr.,* No. 82 Civ. 1919, 1986 WL 2194 *2 (S.D.N.Y.1986) (quoting *United States v. Cirami,* 563 F.2d

26, 32 (2d Cir.1977) (hereinafter "Cirami II")).

■ In this Circuit, an attorney's gross negligence is not a basis for relief under Rule 60(b)(6). *See United States v. Cirami,* 535 F.2d 736, 741 (2d Cir.1976) (hereinafter "*Cirami I*"); *United States v. Gelb,* No. 86 Civ. 1552, 1991 WL 20011 *4, 1991 U.S. Dist. LEXIS 1507 *10 (S.D.N.Y.1991); *Jarblum, Solomon & Fornari, P.C. v. Becker,* No. 87 Civ. 8950, 1990 WL 213031 *3, 1990 U.S. Dist. LEXIS 17118 *8 (S.D.N.Y.1990); *Ituarte v. Chevrolet Motor Div.,* No. 86 Civ. 2843, 1989 WL 10562 *4 n. 2, 1989 U.S. Dist. LEXIS 1146 *7 n. 2 (E.D.N.Y.1989). Nevertheless, the Second Circuit has held that an attorney's mental illness can constitute an "extraordinary circumstance" justifying relief under Rule 60(b)(6). *See Cirami II,* 563 F.2d at 34–35; *Ituarte,* 1989 WL 10562 at *5, 1989 U.S. Dist. LEXIS 1146 at *7; *Goldberg v. Rouche Ross & Co.,* No. 74 Civ. 1483, *slip op.* at 2 (S.D.N.Y. Dec. 7, 1982). In *Cirami II,* defendants' attorney failed to oppose a partial summary judgment motion in a federal tax collection action. The court granted partial summary judgment due to lack of opposition. Represented by new counsel, defendants moved to vacate the judgment under Rule 60(b)(6). In support of their motion, defendants submitted affidavits setting forth their attempts to contact their prior attorney and they detailed the prior attorney's assurances that he was addressing the matter. Defendants also submitted affidavits from their former attorney and his psychologist that contained assertions that during the relevant time period, prior counsel had been undergoing psychoanalysis. The Second Circuit found that, if proved, this situation merits Rule 60(b)(6) relief. The court reasoned that "[i]n the present case we have the possibly unique fact of what we may term the 'constructive disappearance' of defendants' attorney, who was allegedly suffering from a psychological disorder which led him to neglect almost completely his clients' business while at the same time assuring them that he was attending to it, and who had made himself unavailable even to the trial judge." *Cirami II,* 563 F.2d at 34; *see also Ituarte,*

October 11, 1991, December 13, 1991, and April 30, 1992.

1989 WL 10562 at *4–5, 1989 U.S. Dist. LEXIS 1146 at *5–6, 12–13 (Rule 60(b)(6) relief appropriate where party's failure to respond to discovery requests resulted from attorney experiencing depression and anxiety in the relevant time period, an assertion supported by affidavits from counsel and his psychoanalyst); *cf. Goldberg, slip op.* at 1–2 (deteriorating physical health, and ultimately death, of attorney, in relevant time period, is extraordinary circumstance meriting relief under Rule 60(b)(6)).

■ In this case, Former Counsel and her psychiatrist have stated in affidavits that Former Counsel was undergoing treatment for severe depression at the time this Court acted pursuant to Local Rule 27 and Rule 41. Indeed, Former Counsel began receiving psychiatric treatment in January 1990, four months before this Court published Local Rule 27 notice, and the treatment continued throughout 1990 and 1991. When an able attorney, which Former Counsel appears to have been,[2] suddenly ignores Court orders and is unable to be reached despite diligent attempts, " 'it does not require medical expertise to know that ... something is obviously wrong' " with counsel. *Ituarte,* 1989 WL 10562 at *4, 1989 U.S. Dist. LEXIS 1146 at *13 (quoting *Benhil Shirt Shops, Inc. v. Lynns, Inc.,* 87 B.R. 275 (S.D.N.Y.1988)). Such a situation constitutes an extraordinary situation justifying relief under Rule 60(b)(6).

GHR contends that "nowhere is it alleged that [Former Counsel's] condition was so mentally disabling that it prevented her from responding to the Court's notice to dismiss the case.... The inescapable conclusion to be drawn is that plaintiff's case was dismissed as a result of Former Counsel's pure neglect and *not* due to her medical condition." *Letter from Joseph Capobianco, counsel for GHR, to Hon. David N. Edelstein* (August 13, 1993) (emphasis in original). GHR's contention notwithstanding, the affidavits submitted by former counsel and her psychiatrist reveal that a disabling emotional condition fundamentally compromised her ability to provide adequate representation.

The crucial issue is not whether Former Counsel was mentally or physically capable of performing some of the tasks required in her practice, or even whether she actually discharged some of her professional obligations during the relevant time period; less than total disability may constitute an extraordinary circumstance under Rule 60(b)(6). This Court's focus is whether a sufficiently serious medical condition so affected Former Counsel's ability to perform that relief is justified due to extraordinary circumstances. Comparing the vast difference between Former Counsel's pre- and post-illness representation of plaintiff, in conjunction with the relevant affidavits submitted concerning her illness, it is clear that Former Counsel's medical condition compromised her ability to represent her client and caused her not to respond to this Court's notice under Local Rule 27.

■ Furthermore, this Court finds that plaintiff has moved to vacate the judgment in a "reasonable time," as mandated by Rule 60(b)(6). What constitutes a reasonable time for purposes of Rule 60(b)(6) will necessarily vary with the particular circumstances of a case. Addressing the "reasonable-time" limitation requires "scrutiny[y] of the particular circumstances of the case, and balanc[ing] the interest in finality with the reason for delay." *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). In addition, courts consider the possibility of prejudice to the opposing party. *See In re Emergency Beacon Corp.,* 666 F.2d 754, 760 (2d Cir.1981); *Cirami II,* 563 F.2d at 35; *Vindigni v. Meyer,* 441 F.2d 376, 377 (2d Cir.1971); *Socialist Republic of Romania v. Wildenstein,* 147 F.R.D. 62, 65 (S.D.N.Y. 1993).

■ This Court dismissed plaintiff's complaint in April 1991, and plaintiff moved to vacate the default in March 1993. Accordingly, approximately two years elapsed between the entry of judgment and the motion to vacate the default. Nevertheless, this

**2.** Indeed, plaintiff retained Former Counsel on the recommendation of Coudert Brothers. *Sen- tosa Aff.* at ¶ 7.

two-year time lag is deceiving. Only after obtaining the files from the Federal Record Center in New Jersey in late January 1993 did BIN learn that the case had been dismissed. *Sentosa Aff.*, at ¶ 10. Therefore, its motion to vacate the judgment comes only two months after it learned of entry of judgment against it. Moreover, BIN did not remain idle from its last communication with former counsel in February 17, 1990 until it learned of the judgment. In his affidavit, Mr. Chandra Sentosa, BIN's Assistant Director, states that beginning in March 1990 he tried on seven separate occasions to contact former counsel by mail and fax, but received no reply. *Sentosa Aff.*, at ¶ 9. After receiving no reply from former counsel,

> [I]n June 1992 [BIN] engaged an agent to go to New York to try to locate [Former Counsel]. He travelled to America and discovered that [Former Counsel's] employers [Pan Am] from whose offices ... she had practised [sic] were in liquidation. The New York Bar Association and Court of Administration records still had her practise [sic] address registered at that address. The office phone and fax lines were disconnected. No entry could be found for [Former Counsel] in the telephone directory. Event [sic] Coudert Brothers could not find [Former Counsel] and gave us an out of date telephone number.

*Sentosa Aff.*, at ¶ 9.

It is true that from March 1990 through April 1992, plaintiff received no reply to correspondence sent to its former counsel, and that it did not seek other means to ascertain the status of its case until June 1992, when it sent an agent to New York. Nevertheless, under the circumstances, this course of conduct is not unreasonable. In addition to the actions BIN did undertake, it is important to note that BIN is an Indonesian corporation, and its directors, as Mr. Sentosa notes, are "not familiar with the Judicial process in the United States, [and they] assumed BIN's case was proceeding." *Sentosa Aff.*, at ¶ 9; *cf. Ituarte*, 1989 WL 10562 at *5, 1991 U.S. Dist. LEXIS 1146 at *12 ("There is no reason to think that these tort plaintiffs possessed the sophistication to understand,

much less monitor, their attorney's compliance with pre-trial civil discovery orders."). Accordingly, plaintiff's motion is timely under Rule 60(b)(6).

 Finally, vacating the judgment will not prejudice defendants. As a threshold matter, courts view Rule 60(b) motions more favorably where, as here, granting the motion will permit an adjudication on the merits. *See SEC v. Seaboard Corp.*, 666 F.2d 414, 417 (9th Cir.1982); *Ituarte*, 1989 WL 10562 at *4, 1989 U.S. Dist. LEXIS 1146 at *7. In addition, prejudice resulting from the passage of time is not a sufficient ground for denying relief. *See Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983). Moreover, the alleged unavailability of the defendants' employee who negotiated the contract with plaintiff does not produce prejudice: Resolution of factual issues in this matter will not, in all likelihood, turn on such an employee's testimony, but rather on the contract itself and the issue of whether defendant received and paid for the dresses. Moreover, this employee no longer worked for defendant as long ago as February 1989, around the time that plaintiff commenced this cause of action; presumably, defendants' lack of access to this individual is only marginally diminished, if at all, by the passage of time. *Affidavit of Howard Rahn, President of GHR*, at ¶ 5 and accompanying footnote (February 16, 1989).

An additional comment is appropriate. Former Counsel, on her own initiative, undertook to make this Court aware of her medical circumstances in 1990 and 1991. Neither counsel for plaintiff or defendant, nor this Court, solicited her letter and accompanying affidavits. I believe that in writing this Court, Former Counsel has exhibited professional dignity and integrity, upholding traditional, though by no means fashionable or prevalent, notions of an attorney's worth. Her act is one of courage and grace.

### Conclusion

For the reasons stated above, plaintiff's motion to vacate the order dismissing the complaint for lack of prosecution is GRANTED. The case is restored to the active docket. The parties shall complete discovery within 90 days of the filing of this Order, and

shall submit to the Court a Joint Pretrial Order within 120 days of the filing of this Order.

SO ORDERED.