**Johnny COBOS, et al., Plaintiffs,**

v.

**ADELPHI UNIVERSITY, the New York State Education Department, and the New York State Higher Education Services Corporation, Defendants.**

No. 95–CV–1840 (FB).

United States District Court, E.D. New York.

May 6, 1998.

Johnny Cobos, South Ozone Park, NY, pro se.

Kevin McDonough, Bennett, Pape, Rice & Schure, Rockville Centre, NY, for Adelphi University.

Dennis C. Vacco, Attorney General of State of New York, by Lisa R. Dell, New York City, for New York State Department of Education and New York State Higher Education Services Corporation.

### ORDER

BLOCK, District Judge.

By order dated April 26, 1996, the Court dismissed this action for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Plaintiffs moved to reopen the case and to consolidate it with *Butler v. Adelphi University*, 94–CV–2062, and the Court referred this motion to Magistrate Judge Viktor V. Pohorelsky for a report and recommendation. The Court is in receipt of Judge Pohorelsky's Report and Recommendation dated March 19, 1998 recommending that plaintiffs' motion to reopen and motion to consolidate be denied. No objections to Judge Pohorelsky's Report and Recommendation have been filed. The Court has undertaken a *de novo* review of this thorough Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(C).

*See United States v. Male Juvenile*, 121 F.3d 34, 39 (2d Cir.1997) (district court may conduct *de novo* review where no objections to magistrate's recommendations have been filed). The Court hereby adopts it in its entirety.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

Before the court is the plaintiffs' motion to reopen this case, which was dismissed for failure to prosecute by an order issued pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Also before the court is the plaintiff's motion to consolidate this action, if reopened, with *Butler v. Adelphi University*, CV 94–2062(FB). These motions have been referred to the undersigned magistrate judge pursuant to Title 28, Section 636(b)(1)(B) of the United States Code for a report and recommendation. Because the plaintiffs have failed to meet the requirements imposed by Rule 60(b) of the Federal Rules of Civil Procedure and because they do not possess a meritorious claim, this court REPORTS and RECOMMENDS that the motion to reopen be DENIED and that the motion to consolidate be dismissed as MOOT.

### BACKGROUND

The pro se plaintiffs are sixteen African American and Hispanic former students of the defendant Adelphi University, a private educational institution. The other defendants are New York State Education Department and New York State Higher Education Services Corporation (collectively, "state defendants"), state agencies charged with the administration of financial and education programs.

Stated broadly, the plaintiffs' federal claims allege, *inter alia*, that the defendants deprived them of their rights under the Thirteenth and Fourteenth Amendments of the United States Constitution in violation of Title 42, Section 1983 of the United States Code. The plaintiffs also allege that the defendants violated Title 42, Section 2000d of the United States Code and the Federal Trade Commission Act ("FTCA"). These violations allegedly occurred when Adelphi

phased out its Higher Education Opportunity Program ("HEOP") thereby reducing the financial aid available to African American and Hispanic students. The plaintiffs contend that they were entitled to these financial benefits pursuant to federal and state law and, accordingly, have included state law claims in their complaint. They assert that the state defendants and Adelphi, "knowingly and purposely acting individually and in conspiracy with each other," deprived the plaintiffs of their constitutional and statutory rights. Compl. ¶ 3.

## PROCEDURAL HISTORY

The complaint was filed on May 5, 1995. On August 22, 1995, Adelphi applied by letter to the court for a premotion conference to discuss its proposed motion to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. At the premotion conference held October 6, 1995, District Judge Frederic Block referred the matter to Early Neutral Evaluation ("ENE"). Following the premotion conference, however, the plaintiffs' counsel, Regina M. Tate, informed the defendants that she intended to file an amended complaint. Thereafter, on November 10, 1995, Judge Block endorsed the parties' October 19, 1995 stipulation and order permitting the plaintiffs to file an amended complaint and extending the state defendants' time to answer until thirty days after its service. On November 27, 1995, Judge Block endorsed the parties' October 13, 1995 stipulation granting Adelphi the same extension. Despite several requests by Adelphi, Tate failed to forward a copy of the complaint, amended or otherwise, to ENE. *See* McDonough Letter, Apr. 8, 1996. An amended complaint was never filed and no reason is offered by the plaintiffs to explain this omission.

On January 19, 1996, more than eight months after the filing of the initial complaint, the court issued to the plaintiffs a request for a written status report of this matter, requiring a response to the court within ten days to avoid dismissal pursuant to Rule 41(b) for failure to prosecute. The court received no response. By letter of April 8, 1996, nearly a year after the initial complaint was filed, Adelphi applied to Judge Block for permission to file a Rule 41(b) motion to dismiss the complaint in its entirety, citing the above-referenced delays. At a conference held on April 26, 1996, at which Tate failed to appear, Judge Block ordered the entire case dismissed without prejudice for failure to prosecute. The order informed the plaintiffs that they were permitted ten days to move for reconsideration of the order. On May 6, 1996, that order was entered and the case was closed.

Although no motion for reconsideration appears on the docket or in the court file, opposition to such a motion was filed by the defendants. From the defendants papers, it appears that, at some point after the expiration of the ten-day limitation period, Tate asked, *inter alia,* that the plaintiffs' case be restored to the court's calendar; that the plaintiffs be permitted to amend their complaint; and that this case be consolidated with *Butler.*

Apparently that application was denied as untimely because, on July 12, 1996, Judge Block issued an order to inform the plaintiffs of their rights with regard to the filing of a new claim. Noting that Tate may have placed her clients' rights in jeopardy with her "failure to make a *timely* motion to reconsider and her continuing failure to file a new action," the court directed her to send a copy of the order to each of the plaintiffs and to submit to the court proof that she had complied. Tate failed to file the proof and it remains unclear precisely when the plaintiffs learned of the April 26, 1996 and July 12, 1996 orders. The parties have submitted no evidence on this point.[1] The record is also devoid of any explanation for Tate's conduct.

By letter of January 15, 1997, the plaintiffs applied directly to Judge Block to reopen their case. In the same correspondence, the plaintiffs asked that Tate be relieved of her duties as their counsel and that "she be referred to the disciplinary committee of the American Bar Association." The motion to

---

1. A letter dated November 13, 1996 attached to the plaintiffs' motion papers suggests that they had learned of the April 26, 1996 order by June of 1996.

reopen was opposed by Adelphi and by the state defendants, by letters of January 28, 1997 and May 20, 1997,[2] respectively. On May 27, 1997, the plaintiffs again wrote to Judge Block asking that their case be reopened and that it be consolidated with *Butler*.[3]

On September 25, 1997, the Appellate Division of the Supreme Court of New York for the First Judicial Department issued an order suspending Tate from the practice of law for, *inter alia*, her "willful failure to cooperate with the [Disciplinary] Committee," and "professional misconduct." The Appellate Division described Tate's conduct as evincing "shocking disregard for the judicial system." *In re Regina M. Tate*, 233 A.D.2d 53, 54, 662 N.Y.S.2d 482 (1st Dep't 1997).

Also in September of 1997, each of the defendants applied to the court regarding the status of this case. On October 7, 1997, the now pro se plaintiffs moved the court yet again to reopen the case. On October 28, 1997, Judge Block referred the plaintiffs' motions to reopen and to consolidate to the undersigned for a report and recommendation and, on the same day, the undersigned directed the defendants to submit papers in opposition to the plaintiffs' motion to reopen by November 17, 1997. The state defendants submitted their opposition by letter dated November 13, 1997. Adelphi opposed by letter dated November 17, 1997. On December 5, 1997, the plaintiffs submitted their reply.

## DISCUSSION

### I. Rule 60(b) Standards to Vacate a Final Order

Where an action is dismissed for want of prosecution pursuant to Rule 41(b), Rule 60(b) allows it to be reopened under certain,

enumerated circumstances. *Link v. Wabash*, 370 U.S. 626, 632, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Fed.R.Civ.P. 60(b). Accordingly, although the plaintiffs do not specifically rely on Rule 60(b) in support of their motion, the court construes it as a Rule 60(b) motion for relief from a final order.[4] *See Phillips v. Corbin*, 132 F.3d 867, 868 (2d Cir.1998).

■ A motion under Rule 60(b) is addressed to the sound discretion of the trial court. *See, e.g., Klein v. Williams*, 144 F.R.D. 16, 18 (E.D.N.Y.1992). To grant relief from a final order pursuant to Rule 60(b), a court must find that (1) the circumstances of the case present grounds justifying relief and (2) the movant possesses a meritorious claim in the first instance. *See Pioneer Inv. Servs., Inc. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (grounds); *Babigian v. Association of the Bar of the City of New York*, 144 F.R.D. 30, 33 (S.D.N.Y.1992) (meritorious claim) (citing *Lepkowski v. United States Dep't of Treasury*, 804 F.2d 1310, 1314 (D.C.Cir.1986)). When evaluating each requirement, the court must resolve "all doubts ... in favor of those seeking relief." *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983); *see Trident Groupage v. Royal Coffee, Ltd.*, No. 94 CIV. 6065, 1996 WL 445356, at *2 (S.D.N.Y. Aug. 6, 1996).

### A. *Rule 60(b) Grounds*

The real crux of the plaintiffs argument is that Tate's mismanagement of their case justifies relief under Rule 60(b). Less clear, however, is which of the grounds for relief enumerated in Rule 60(b) the plaintiffs' intend to invoke. Although Rule 60(b) delineates six reasons permitting a court to "relieve a party ... from a final judgment, order or proceeding," Fed.R.Civ.P. 60(b),

---

**2.** In their May 20, 1997 letter, the state defendants assert that they became aware of the plaintiffs' January 15, 1997 application only by reviewing the docket sheet in this case. The plaintiffs' January 15, 1997 letter bears no indication that the state defendants were served.

**3.** On May 30, 1997, the plaintiffs applied directly to the undersigned to request a status conference but, as the case remained closed, that request was denied.

**4.** Although the pro se plaintiffs failed to cite Rule 60(b) in support of their January 15, 1997 motion to reopen, each of the defendants presented their arguments in opposition as if the plaintiffs had. The plaintiffs' letters of January 15, 1997 and May 27, 1997 are fairly read as a motion to reopen their case on one or more of the grounds enumerated in Rule 60(b).

only two of those reasons are potentially applicable here. Rule 60(b) states, in relevant part:

> [t]he court may relieve a party ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b).[5] Clauses (1) and (6) are mutually exclusive and it is well-settled that a remedy is only available under clause (6) where the grounds for relief do not fall within the ambit of clause (1). *See, e.g., Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489; *Brown,* 109 F.R.D. at 413 (citing *In re Emergency Beacon Corp.,* 666 F.2d 754, 758 (2d Cir.1981)).

### 1) *Rule 60(b)(1)—Excusable Neglect*

To analyze whether relief from a final order should be granted under Rule 60(b)(1), a court must first determine whether the order from which relief is sought was the consequence of "excusable neglect" by the movant or the movant's counsel. Fed.R.Civ.P. 60(b)(1); *see Pioneer,* 507 U.S. 380, 381, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Canfield v. Van Atta Buick,* 127 F.3d 248, 250 (2d Cir.1997). Of course, even if these grounds apply, the court must still decide whether the movant possesses a "meritorious claim." *See Babigian,* 144 F.R.D. at 33 (citing *Lepkowski,* 804 F.2d at 1314).

The plaintiffs have not alleged, nor does the court find, that the grounds of "mistake, inadvertence, surprise, or excusable neglect" are applicable to the facts presented by this case. In fact, in their December 5, 1997 reply, the pro se plaintiffs freely admit that Tate's neglect was "inexcusable." Cobos Letter, at 2. The court is not convinced, however, that their use of the word is intend-ed to convey the legal meaning contemplated by the word "excusable" in Rule 60(b)(1). For this reason, the court independently analyzes whether Tate's omissions might fairly be labeled "excusable neglect."

■ In *Pioneer,* the Supreme Court explained that the finding of "excusable neglect" was an equitable determination which could be reached only after an analysis of "all relevant factors including 'the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Pioneer,* 507 U.S. at 385, 113 S.Ct. 1489; *Weinstock v. Cleary, Gottlieb, Steen & Hamilton,* 16 F.3d 501, 503 (2d Cir.1994); *see Canfield,* 127 F.3d at 250; *United States v. Hooper,* 43 F.3d 26, 28 (2d Cir.1994). The *Pioneer* Court stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." 507 U.S. at 391, 113 S.Ct. 1489. The requirement that negligence be "excusable" acts as a limitation necessary to prevent abuse by the parties, *id.* at 392, 113 S.Ct. 1489, and for this reason, gross negligence cannot be labeled "excusable." *Cf. United States v. Cirami,* 563 F.2d 26, 30 (2d Cir.1977) (*Cirami II* ) (discussing gross negligence in the context of a Rule 60(b)(6) motion).

■ Within the Second Circuit, a "client is not generally excused from the consequences of his attorney's negligence absent extraordinary circumstances." *Klein,* 144 F.R.D. at 18 (citing *Chira v. Lockheed Aircraft,* 634 F.2d 664, 666 (2d Cir.1980)); *see Nemaizer v. Baker,* 793 F.2d 58, 62 (2d Cir.1986). Indeed, the Second Circuit has "rather consis-

---

**5.** Rule 60(b) also permits a court to relieve a party on grounds of:

> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application ...

Fed.R.Civ.P. 60(b). Because there is no claim of newly discovered evidence or fraud and because the judgment in question is neither void nor can it have been satisfied, clauses (2) through (5) are clearly inapplicable here. However, in their December 5, 1997 reply, the plaintiffs discuss "excusable neglect" and "exceptional circumstances" and, therefore, the court deems that the plaintiffs seek relief from a judgment pursuant to either Rule 60(b)(1) or Rule 60(b)(6).

tently refused to relieve a client of . . . a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload." *United States v. Cirami*, 535 F.2d 736, 741 (2d Cir.1976) ("*Cirami I*"); *Nemaizer*, 793 F.2d at 62. "[T]his is because a person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omissions." *Link*, 370 U.S. at 633–34, 82 S.Ct. 1386; *Nemaizer*, 793 F.2d at 62. Further, the Second Circuit has interpreted *Pioneer* to stand for the proposition that where the order from which relief is sought is the result of "[c]ounsel's failure to read and obey an unambiguous court rule," counsel's omission is not excusable. *Canfield*, 127 F.3d at 251. Although failure to understand the effects of a dismissal is an insufficient ground under Rule 60(b), *see PRC Harris v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir.1983), the application of this proposition is particularly appropriate where "the opposing party told [the negligent party] what the rule said." *Canfield*, 127 F.3d at 251.

■ An attorney's failure to follow an unambiguous statute generally will not result in a finding of "excusable neglect" particularly where, as here, the *court* told the attorney when and how the motion to reconsider must be made and advised the plaintiffs as to the timing to file a new complaint. *Id.* While the plaintiffs appear to make their motion in good faith, their own eight-month delay almost doubled that caused by Tate's inattention and has worked to prejudice the defendants. *See Pioneer*, 507 U.S. at 398, 113 S.Ct. 1489.

■ Although the complaint was first dismissed almost two years ago, the defendants still find themselves litigating this case. Some of the events underlying the complaint occurred, if at all, nearly nine years ago. During the intervening years, several senior administrators have left Adelphi's employ, including Peter Diamandopoulos, former president of Adelphi. According to Adelphi, some of these administrators would be likely defense witnesses who may now be difficult, if not impossible, to locate and to persuade to assist in the defense of this case. In fact, Diamandopoulos, the individual responsible for the 1991 decision to phase out Adelphi's HEOP, is now the plaintiff in a separate, breach of employment contract lawsuit brought against Adelphi. As Adelphi notes, "it is questionable as to whether he would cooperate with the University in defending this lawsuit." McDonough Letter, Nov. 17, 1997, at 4. These circumstances combine to render an effective defense more burdensome for the defendants to mount. Taken together, they result in the inescapable finding that reopening the action will result in substantial prejudice to the defendants.

Certainly it was within the plaintiffs' power to ascertain the status of their case at some point prior to January 15, 1997, almost two years after the initial complaint was filed. Also detrimental to their cause are the plaintiffs' asserted reasons for the delay in filing, those of Tate's negligence and their own lack of legal knowledge. Like Tate's negligence, the plaintiffs' failure to understand the law cannot serve as grounds for reopening. Further, as noted, the plaintiffs cannot be relieved of the consequences of their selection of Tate where they have not shown extraordinary circumstances exist to warrant that relief. When each of the *Pioneer* factors is weighed, the court finds that the scales tip heavily in the defendants' favor.

In addition, the court is cognizant of the Appellate Division's suspension of Tate from the practice of law, largely as a result of her acts and omissions in this case. Tate's total disregard for her clients' rights, this court's orders, and professional ethics, persuades the court that her actions are more akin to "gross negligence," an inexcusable form of neglect. *See Dominguez v. United States*, 583 F.2d 615, 616 (2d Cir.1978) (labeling attorney's failure to appear at a pretrial conference "gross negligence"). Because gross negligence is not excusable neglect in this circuit and because the *Pioneer* factors weigh heavily in favor of the defendants, excusable neglect should not serve as grounds for the plaintiffs to reopen this case.

## 2) *Rule 60(b)(6)—Any Other Reason Justifying Relief*

As discussed, the movants concede that Tate's conduct was *"in* excusable neglect." Cobos Letter, Dec. 5, 1997, at 2. They argue instead that Tate's behavior was so extreme that it rises to the level of "exceptional circumstances" required to prevail on a Rule 60(b) motion.

■ Rule 60(b)(6) permits relief from a final order for "any other reason justifying relief." This language has been interpreted to require that a "meritorious reason" be put forth by the movant in support of the Rule 60(b) motion. *EEOC v. Consolidated Edison Co.,* 557 F.Supp. 468, 474–75 (S.D.N.Y.1983). Moreover, because the scope of Rule 60(b)(6) is potentially broad, relief is justifiable only where the movant shows "exceptional circumstances [or] extreme hardship." *Cirami II,* 563 F.2d at 30. In addition, while any Rule 60(b) motion is addressed to the sound discretion of the trial court, judicial discretion "is especially broad under clause (6) to accomplish justice." *Emergency Beacon,* 666 F.2d at 760; *see Klein,* 144 F.R.D. at 18. Rule 60(b)(6) calls for liberal application. *Cirami II,* 563 F.2d at 32; *EEOC,* 557 F.Supp. at 473. Finally, as discussed, Rule 60(b)(6) relief may not be granted where the grounds are encompassed by one or more of clauses (1) through (5). *Emergency Beacon,* 666 F.2d at 758.

■ The Second Circuit has addressed the issue of what types of attorney conduct may constitute extraordinary circumstances sufficient to give rise to grounds for a Rule 60(b)(6) motion. *See, e.g., Cirami II,* 563 F.2d at 30; *Nurani v. Marissa,* 151 F.R.D. 32, 33 (S.D.N.Y.1993). It is well-settled that an attorney's neglect of a case will not provide the basis for a Rule 60(b)(6) motion. *Cirami II,* 563 F.2d at 30. Even an attorney's gross negligence is not a basis for relief under Rule 60(b)(6) unless the gross negligence is explained by exceptional circumstances and the movant makes a showing of client diligence in the face of the attorney's negligence. *See Dominguez,* 583 F.2d at 617; *Cirami I,* 535 F.2d at 741 (declining to hold that attorney gross negligence could provide the basis for a Rule 60(b)(6) motion

absent showing of client diligence); *see also United States v. Gelb,* No. 86 CIV. 1552, 1991 WL 20011, at *4 (S.D.N.Y.1991); *Nurani,* 151 F.R.D. at 34. Not surprisingly, Rule 60(b)(6) does not afford relief for deliberate tactical decisions of a party. *See Nemaizer,* 793 F.2d at 59–60.

■ Conversely, where an attorney's mishandling of a movant's case stems from the attorney's mental illness, "extraordinary circumstances justifying relief under Rule 60(b)(6)" may exist. *Nurani,* 151 F.R.D. at 34; *see Cirami II,* 563 F.2d at 34–35. Even in these extraordinary circumstances, however, client diligence must still be shown. *Nurani,* 151 F.R.D. at 35–36; *Cirami II,* 563 F.2d at 34–35. In *Nurani,* an attorney's "disabling emotional condition fundamentally compromised her ability to provide adequate representation" to her clients. *Nurani,* 151 F.R.D. at 35. In support of the clients' motion to vacate, both the attorney and her psychiatrist submitted affidavits detailing the severity of the attorney's illness. *Id.* Furthermore, the *Nurani* movants offered proof of seven separate attempts to contact the attorney by fax or mail. *Id.* at 36. The movants finally learned of the court's dismissal only by obtaining the case file directly from the Federal Record Center. *Id.* Less than two months after this discovery, the clients moved to vacate the dismissal. *Id.* The *Nurani* court found that the attorney's mental illness, combined with the client's diligence, presented exceptional circumstances justifying relief under Rule 60(b)(6). A similar conclusion was reached on similar facts in *Cirami II.*

■ There is agreement between the parties that Tate's gross negligence in the management of the movants' case resulted in the April 26, 1996 Rule 41(b) dismissal. Tate's gross negligence alone, however, cannot provide a basis for relief under Rule 60(b)(6). The plaintiffs have not offered evidence of exceptional circumstances to explain Tate's conduct. They have not shown that Tate's behavior rises to the level contemplated by decisions such as *Nurani* and *Cirami II.* They make no claim that Tate was mentally disabled or otherwise incapacitated.

They simply state that Tate was guilty of "inexcusable neglect." Cobos Letter, Dec. 5, 1997, at 2. Nor have the plaintiffs offered any evidence of their own diligence in prosecuting the action prior to Judge Block's April 26, 1996 order dismissing the case. A client will not be relieved from the consequences of an attorney's poor performance, particularly where, as here, no explanation is offered for the poor performance and the client has not shown diligence in litigating the claim. Therefore, the court can find no extraordinary circumstances to justify relief from the Rule 41(b) dismissal order.

### B. *Meritorious Claim*

Even where the movants show that their motion to reopen is encompassed by the grounds enumerated in Rule 60(b), they must still show that they possess a meritorious claim before they can prevail. *See, e.g., Cirami II,* 563 F.2d at 29; *Babigian,* 144 F.R.D. at 33 (citing *Lepkowski,* 804 F.2d at 1314); *see also Wagstaff–EL v. Carlton Press Co.,* 913 F.2d 56, 57, 58 (2d Cir.1990) (holding that denial of relief of default judgment where non-movant has a meritorious defense would constitute a "serious miscarriage of justice"); *Klein,* 144 F.R.D. at 18 (noting that even where the movant had not shown excusable neglect, "the court would readily set aside the judgment of dismissal" if he could show a "meritorious defense" to defendants' motion). A claim that is barred by the applicable statute of limitations is not "meritorious" because the movants cannot show "that vacating the judgment will not be an empty exercise or futile gesture." *Owens v. United States,* No. 96 CIV. 5928, 1997 WL 177863, at *2 (E.D.N.Y. Apr. 3, 1997).

Both the state defendants and Adelphi argue that the claims under Sections 1983 and 2000d are barred by the applicable statutes of limitations. In addition, the state defendants argue that sovereign immunity, pursuant to the Eleventh Amendment, renders them immune from the plaintiffs' Section 1983 and state law claims. Adelphi also contends that the plaintiffs' allegations do not rise to the level of legally actionable claims, noting that the complaint makes "no legal or common sense," apparently arguing that the

balance of the plaintiffs' allegations fail to state a claim. McDonough Letter, Nov. 17, 1997, at 2. The plaintiffs do not respond to these arguments.

### 1) *Statute of Limitations*

Section 1983 borrows its statute of limitations on claims brought in federal district court in New York from the three-year statute of limitations New York applies to personal injury actions. *E.g., Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Jewell v. County of Nassau,* 917 F.2d 738, 740 (2d Cir.1990); *see* N.Y. C.P.L.R. 214(2) (McKinney 1990). The same three-year statute of limitations applies to Section 2000d claims. *E.g., Mussington v. St. Luke's–Roosevelt Hosp. Ctr.,* 824 F.Supp. 427, 433 n. 4 (S.D.N.Y.1993), *aff'd,* 18 F.3d 1033 (2d Cir.1994) (per curiam). The statute of limitations begins to run when the decision giving rise to the alleged violation is made and communicated to the plaintiffs. *See Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Veal v. Geraci,* 23 F.3d 722, 724 (2d Cir. 1994).

In their complaint, the plaintiffs allege that the decision to cancel the HEOP was implemented in May of 1991. Compl. ¶ 36. Accordingly, the plaintiffs would have had to file their complaint within three-years of that date, or in May of 1994, for it to be timely. The complaint was initially filed on May 5, 1995, four years after the alleged violation and one year past the running of the statute of limitations. The plaintiffs cannot, therefore, state either a Section 1983 or a Section 2000d claim because their action was not timely filed.

If this court were to grant the plaintiffs' Rule 60(b) motion, their federal claims would be subject to immediate dismissal pursuant to Rule 12(b)(6) for failure to state a claim. *See, e.g., Baker v. Latham Sparrowbush Assocs.,* 72 F.3d 246, 251 (2d Cir.1995). A court should not grant a Rule 60(b) motion where to do so would be an "empty exercise or futile gesture." *Owens,* 1997 WL 177863 at *2. For this reason, the undersigned concludes that the plaintiffs' claims under Sec-

tions 1983 and 2000d lack merit sufficient to justify granting a Rule 60(b) motion.

### 2) *Sovereign Immunity*

■ The state defendants also rely on the Eleventh Amendment in support of their argument that the plaintiffs lack a meritorious claim. The Eleventh Amendment grants the State and its agencies or departments immunity from suit absent the State's consent. *Pennhurst,* 465 U.S. at 100, 104 S.Ct. 900. Although Congress may abrogate the doctrine with "unmistakably clear language," where it fails to do so, the doctrine remains in full force. *Id.*

The Second Circuit has explicitly stated that the state defendants, New York State Education Department ("SED") and New York State Higher Education Services Corporation ("HESC"), are immune from suit brought pursuant to Section 1983. *See, e.g., United States v. City of Yonkers,* 96 F.3d 600, 619 (2d Cir.1996) (affirming dismissal of Section 1983 suit brought against SED on Eleventh Amendment grounds); *Oliver Schs., Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir.1991) (affirming dismissal of Section 1983 suit brought against HESC suit on Eleventh Amendment grounds). The state defendants are also immune from the state law claims. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Well-settled law requires the finding that the state defendants are immune from both Section 1983 and state law claims. For this reason as well, the plaintiffs cannot state meritorious Section 1983 or state law claims against the state defendants.

### 3) *Failure to State a Claim*

#### a) Thirteenth Amendment

To the extent that the plaintiffs attempt to assert claims against the defendants for violations of the Thirteenth Amendment not covered by Section 1983, the court finds that the plaintiffs have failed to show this to be a meritorious claim. There is absolutely no language in the complaint that would support a finding that the defendants had violated the Thirteenth Amendment's "involuntary servitude" prohibition. U.S. Const. Amend. XIII.

#### b) Federal Trade Commission Act

■ With regard to the plaintiffs' sixth cause of action, an alleged violation of the FTCA, the court finds that the complaint fails to state a claim. There is no private cause of action under this act. 15 U.S.C. § 45; *see Federal Trade Commission v. Klesner,* 280 U.S. 19, 25, 50 S.Ct. 1, 74 L.Ed. 138 (1929); *Fogel v. Metropolitan Life Ins.,* 871 F.Supp. 571, 574 (E.D.N.Y.1994). Therefore, the court finds that the plaintiffs cannot state a cause of action under FTCA.

Because the plaintiffs have failed to show they possess any meritorious claim and because the defendants have demonstrated that they do not, the undersigned reports and recommends that the plaintiffs' motion to reopen be denied.

### CONCLUSION

The movants have failed to convince the undersigned that valid grounds exist under Rule 60(b) to justify reopening their case. Assuming, however, that the movants could state grounds supported by Rule 60(b), they do not possess a meritorious federal claim against the defendants. For the foregoing reasons, the undersigned **REPORTS AND RECOMMENDS** that the motion to reopen be **DENIED**.

### II. Motion to Consolidate

The plaintiffs have moved this court to consolidate this action with *Butler v. Adelphi University.* However, because the court reports and recommends that *Cobos v. Adelphi University* remain closed, it further **REPORTS AND RECOMMENDS** that the plaintiffs' motion to consolidate be **DENIED AS MOOT**.

\*　\*　\*　\*　\*　\*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d

1049, 1054 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

POHORELSKY, United States Magistrate Judge.

Dated:   Uniondale, New York
         March 18, 1998